339 P.2d 1033

E. F. VICKERS, Sr., Gene Bogard and W. P. Mahoney, as Chairman and members respectively of, and constituting the Employment Security Commission of Arizona, Communication Workers of America Local 8490, Dale Ripley, Arizona Representative of Communications Workers of America, Local 8490, W. M. Demarest, T. D. Carver, R. K. Brooks, Theodore R. Gray and Ten Other Claimants for Unemployment Compensation, Appellants,

v.

WESTERN ELECTRIC COMPANY, Incorporated, a corporation, Appellee.

No. 6469.

Supreme Court of Arizona.

May 27, 1959.

Rehearing Denied July 7, 1959.

Robert Morrison, Atty. Gen., Morris K. Udall, Robert R. Steward, Special Asst. Attys. Gen., for appellants.

Cunningham, Carson & Messinger, and William H. Rehnquist, Phoenix, for appellee.

CHARLES P. ELMER, Judge of Superior Court.

The employees of Mountain States Telephone and Telegraph Company in the Phoenix Metropolitan area, represented by Communication Workers of America, Local 8519, became involved in a labor dispute with their employer on March 7, 1956. Hereafter we will refer to Mountain States Telephone and Telegraph Company as the Telephone Company, and its employees concerned with that labor dispute as the striking employees. These striking employees then stopped work, and that evening and the next morning they set up picket lines around the various premises of the Telephone Company in said Metropolitan area, including the main building at 242 West Adams Street in Phoenix.

The work locations and offices of appellee, Western Electric Company, in this Metropolitan area are on the premises of the Telephone Company. The installers of appellee in this area are represented by the appellant Communication Workers of America, Local 8490. Such installers refrained from working from March 7, 1956, until the strike of the Telephone Company employees ended on May 11, 1956. During such time they refused to cross the picket lines maintained by the striking employees of the Telephone Company. The picket lines were orderly and peaceful. Supervisory employees of appellee are not represented by the union, and they continued to work. Installers of appellee, so unemployed because of refraining from work and refusing to cross such picket lines, filed claims for unemployment compensation.

The hearing of the claimants herein was reached on April 6, 1956. On April 13, 1956, the special deputy before whom the hearing was held released his decision in which he found, among other things:

"2. All of the employer's work locations and offices in the Phoenix Metropolitan Area are on premises of the Mountain States Telephone and Telegraph Company.

"3. Local 8490, Communication Workers of America, hereinafter called the union, represents in bargaining the installers of the employer.

"4. The workers represented by the union refrained from working after March 7, 1956 because there is a labor dispute at the premises in which they work. The dispute is between the Mountain States Telephone and Telegraph Company and certain of its employees. The workers represented by the union refused and are refusing to cross the picket lines which announce the existence of the dispute.

\*    \*    \*    \*    \*    \*    \*

"7. An official of the employer testified that the work and job positions of all the workers who refrained from work have been available to them and are now available and that no one has been removed from the payroll or discharged."

The special deputy then decided that the claimants were disqualified for unemployment benefits "for the week in which they left work voluntarily without good cause in connection with their work and for the four weeks which immediately follow such week * * *." This decision apparently was based on A.R.S. § 23–775.

Both appellee and claimants made timely appeals from the decision of the special deputy to the entire Employment Security Commission of Arizona, which will be herein referred to as the Commission. Appellee contended in its appeal that the claimants should have been found ineligible for benefits for the duration of the strike, because claimants had failed to establish they were "available for work" within the meaning of A.R.S. § 23–771. In the alternative, appellee contended that even if claimants were eligible, they were disqualified for the duration of the strike because of their participation in a labor dispute (A.R.S. § 23–777) rather than disqualified only for four weeks for voluntary quitting (A.R.S. § 23–775) as was held by the deputy.

The hearing before the entire Commission was held on May 17, 1956, at which time appellee endeavored to put in further proof, and when that was denied made certain avowals. On May 21, 1956, the Commission made its decision affirming the decision of the special deputy.

Within the time allowed by law, and in pursuance of A.R.S. § 23–681, appellee petitioned the Superior Court of Maricopa County for a review. No petition for review was made by claimants or any other appellants.

The review was by the Honorable J. Mercer Johnson, then a Judge of Pima County Superior Court, sitting in Maricopa County. The case was thoroughly argued and briefed, and taken under advisement. After due consideration Judge Johnson entered a minute order, reversing the decision of the Commission which had granted benefits after the four-week disqualification period provided for in A.R.S. § 23–775, for the reason "That claimants are ineligible for employment compensation for the entire period by reason of A.R.S. § 23–771."

In conformity with the minute order, judgment was settled and entered herein in the Superior Court on February 5, 1957. In that judgment it was expressly found that the decision of the Commission was affected by errors of law and not supported

by competent, material and substantial evidence in view of the entire record; and that the claimants having been found ineligible for benefits for the entire period of their employment by reason of A.R.S. § 23–771, the court had no necessity to, and did not, rule upon the matter of disqualification of claimants under either A.R.S. § 23–775 or A.R.S. § 23–777. The court then by its judgment reversed the decision of the Commission and denied claimants any benefits for the entire period of their unemployment. The case is now here on appeal by appellants from said judgment.

There are three assignments of error but it seems to us that the one which encompasses all and which goes to the heart of the question which must be determined on this appeal is Assignment of Error No. III, which is as follows:

"The Superior Court erred as a matter of law in ruling that claimants, employees of Western Electric Company, who refrained from working because of the existence of a labor dispute between the Mountain States Telephone and Telegraph Company and some of its employees at the premises in which they worked, and who refused to cross the picket lines which announced the existence of the dispute, were ineligible for compensation during the entire

period of their unemployment under Section 23–771, A.R.S."

We will briefly refer to fundamentals as we so often find that by so doing the way is pointed to the correct solution of whatever problem may be presented.

■ The Declaration of Policy contained in the Employment Security Act of Arizona, A.R.S. § 23–601, reads in part as follows:

"Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good

and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

And in Beaman v. Safeway Stores, Inc., 78 Ariz. 195, 198, 277 P.2d 1010, 1012, we said:

"There can be no question but that the central overall purpose intended to be accomplished by the entire act is to allow compensation for a limited period of time to those capable of working and available for work who are involuntarily unemployed through no fault of their own. * * *"

And the Court of Appeals of Maryland, in Saunders v. Maryland Unemployment Compensation Board, 188 Md. 677, 682, 53 A.2d 579, 581, had this to say about the purpose of the comparable act of that state:

"The purpose of the statute was to alleviate the consequences of involuntary unemployment. It was not intended to penalize or subsidize either employees or employers, lawfully engaged in a labor dispute. It was not intended to compel striking workmen to remain without its benefits longer than their own action made necessary. Nor was it intended to compel employers to finance their employees in a strike against them. * * *"

The pertinent portion of A.R.S. § 23-771 with which we are concerned in this case provides as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any week *only if the* commission finds that:

\* \* \* \* \* \* \*

"3. He is able to work, *and is available for work."* (Emphasis supplied.)

The record in this case includes samples of the claims for unemployment benefits filed by each of the claimants, and subdivision 12 of these forms contain the recital "I am able to work" and "I am available for work". Other than that, claimants offered no proof whatever as to their availability for work.

It is apparent to us that we are here confronted with the problem of applying the law of evidence to this case, rather than having our determination rest on some principle of law peculiar to unemployment compensation cases. For, under the law and the facts as above summarized, the question of the availability of the claimants for work was squarely presented. On that question the burden of proof was cast upon the claimants, and it was for them to proceed to prove by a fair preponderance of the evidence that they met this requirement.

of the statute as to eligibility. In Claim of Sapp, 75 Idaho 65, 68, 266 P.2d 1027, 1029, the Supreme Court of Idaho, considering a law substantially like our own, said:

"The burden is upon the claimant to prove that he has met the requirements and conditions of eligibility for benefit payments including, of course, that he was available for suitable work." Citing "Talley v. Unemployment Compensation Division, etc., 63 Idaho 644, 124 P.2d 784; Huiet v. Schwob Mfg. Co., 196 Ga. 855, 27 S.E. 2d 743; Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77; Hunter v. Miller, 148 Neb. 402, 27 N.W.2d 638; Loew's, Inc. v. California Employment Stab. Comm., 76 Cal.App.2d 231, 172 P.2d 938."

In Ashford v. Appeal Board of Michigan Unemployment Compensation Commission, 328 Mich. 428, 433, 43 N.W.2d 918, 920, we find this holding:

"Nothing in the statute indicates an intention to establish a rule contrary to all ordinary court proceedings. Plaintiff filed a claim. Introduction of that claim or application into evidence did not operate to establish it. The claim does not prove itself. * * *"

The cases relied upon by appellants are clearly distinguishable from the ones now before us. For example, in Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480, the employer contended that the claimants had not fulfilled the benefit eligibility condition under A.R.S. § 23–771— § 23–773, but no question was raised as to the burden of proof on the point of availability. We did hold on the question of availability, that the employer must have meant that the jobs of the employees were open to them, but, of course, on their own terms. It will be remembered however, we were there considering the employees directly involved who had or at least felt they had a grievance against their employer, whereas no such situation is here present in the case of these so-called "sympathy" strikers.

■ Was there other suitable work available? Were the claimants genuinely attached to the labor market? Were they actively seeking any kind of work? We think obviously not. They were too interested in the strike of the Telephone Company employees and were awaiting its end to go back to their old jobs with appellee. Had claimants been seeking other work— making themselves available—they surely would have so testified as was their duty. There is no evidence that they were genuinely attached to the labor market and were willing and ready to accept suitable work which they did not have good cause to refuse. We hold the burden of proof

was on claimants to prove their availability for work and they failed to sustain such burden.

For their first assignment of error appellants complained that the lower court erred in overruling the decision of the Commission where such decision was supported by competent, material and substantial evidence. As we have hereinabove shown, the question of availability for work of the claimant was not so supported, and this assignment is therefore without merit.

Assignment No. II is that the court erred in reversing the Commission's decision where there was no error of law committed. For the reason hereinabove shown this assignment also must be rejected.

It is unnecessary for us, as in the lower court, to consider whether or not claimants were disqualified from receiving benefits under the provisions of A.R.S. § 23-777.

Finding no error in the judgment of the lower court, it is hereby affirmed.

PHELPS, C. J., STRUCKMEYER, J., and WINDES, J., retired, and W. C. TRUMAN, Judge of Superior Court, concur.

NOTE. UDALL and JOHNSON, JJ., were disqualified to sit in this case and Honorable CHARLES P. ELMER, Judge of the Superior Court of Mohave County, and Honorable W. C. TRUMAN, Judge of the Superior Court of Pinal County, sat in their stead. WINDES, J., sat in the case and heard oral arguments therein but has since retired. By stipulation of all parties litigant he is participating in the rendition of this opinion.