**367 P.2d 956**

**Aurelio A. CRAMER, Appellant,**

**v.**

**EMPLOYMENT SECURITY COMMISSION OF ARIZONA, Appellee.**

**No. 7367.**

Supreme Court of Arizona.

En Banc.

Jan. 10, 1962.

George W. Oglesby, Nogales, for appellant.

Robert W. Pickrell, Atty. Gen., Richard J. Daniels, Asst. Atty. Gen., for appellee.

UDALL, Vice Chief Justice.

This is an appeal from a judgment of the Superior Court of Santa Cruz County affirming the Employment Security Commission's denial of unemployment benefits to claimant Aurelio Cramer for the period August 28th to October 2d, 1960 inclusive.

On June 15, 1960, claimant, then an unmarried 19–year-old youth living in Nogales, Arizona with his stepfather, William Cramer, was laid off for the summer months by his employer, the Citizens Utility Company of Nogales. On July 6, 1960, claimant filed for and thereafter received (effective July 3, 1960) unemployment benefits through the week ending August 28, 1960. After that date, however, it was determined that claimant was no longer "available for work"[1] (and hence no longer "eligible" for benefits) principally because of his conduct on August 31st and September 1st of 1960.

A representative of an employer, the Pena Blanca Dam, called upon R. W. Schiltz, manager of the Nogales State Unemployment Service, on August 31, 1960 and asked for a man to "chop some weeds and clean up around the place at $1 an hour", such job to last a week to ten days. The representative desired to return to the Dam with the new man either late that afternoon or at 10 o'clock the next morning. Schiltz asked claimant's stepfather, who happened to be in the unemployment office on the afternoon of August 31, 1960, if he would inform claimant of the job opportunity and have him report to the office "right away".

The stepfather so informed claimant but not until after the unemployment office had closed for the day on August 31st. On the following morning (September 1, 1960) instead of reporting to the unemployment office claimant allegedly chose to interview (unsuccessfully) for a job with a local gas station. However, neither before the alleged 10 a. m. appointment at the gas station nor at any time on September 1, 1960, did claimant report to the unemploy-

---

1. A.R.S. § 23–771 (1956) provides in pertinent part:
   "An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that:
   \*   \*   \*   \*   \*
   "3. He is   \*   \*   \*   available for work."

ment office. Such conduct on the part of the claimant led Schiltz to report the incident in a "Statement Relating to Applicant's Availability for Work" and became the basis for a subsequent determination by Commission deputy E. J. Kerley that claimant was unavailable for work as of August 28, 1960.[2]

Kerley's decision of September 17, 1960 was affirmed by an Appeal Tribunal on November 1, 1960 after a full hearing on the matter on October 26, 1960. At the hearing claimant was questioned extensively regarding his efforts to secure work before and after the incident on August 31st and September 1st of 1960. He could relate but few job inquiries, and with respect to these he was often unable to remember the nature of the work or the location and names of the prospective employers involved. He testified that his failure to report to the unemployment office on September 1st was due to his belief that the job had been filled the previous afternoon. This testimony was controverted by that of the stepfather that he had asked claimant if he was going to check with the unemployment office on the morning

of September 1st. And claimant acknowledged having signed a written statement in the presence of Schiltz to the effect that claimant did "not have any reason for failing to report to the employment office" on September 1st.

The Appeal Tribunal's decision[3] was affirmed by the Commission on December 29, 1960 in the following language:

"In the instant case the evidence is that the claimant was unemployed for 2½ months prior to the time the Employment Service notified his stepfather there was a possibility of a temporary job for him. In spite of this, he did not immediately attempt to contact the Employment Service even though the opportunity was available to him, but waited over one day before even investigating this possible job opportunity. This, in itself, is an indication that he was not sincerely interested in becoming re-employed. In addition, the number of work contacts he made during the period in question are extremely limited and he failed to report for a definite job opening for which he had been ac-

---

2. Kerley's report was as follows:
   "The claimant failed to report to the Employment Service promptly for a job interview as directed. This resulted in his being too late for the job. His actions indicate that he is not making a sincere effort to secure employment. The claimant is not available for work as of August 28, 1960."

3. " * * * [W]e wish to emphasize that we do not hold the claimant unavailable for work on the sole basis of his failure to immediately report for the job interview. However, we do hold him unavailable by reason that we do not believe he had a genuine attachment to the labor market or that he was sincerely interested in obtaining work during the period he was unemployed."

cepted in Fort Huachuca. We therefore find that the claimant was unavailable for work from August 28, 1960, through October 2, 1960." [4]

Affirmance without opinion by the Superior Court followed on July 1, 1961.

■ Availability is an eligibility requirement found in the unemployment compensation law of every state. Although it has never been and probably cannot be precisely defined, Mohler v. Department of Labor, 409 Ill. 79, 83, 97 N.E. 2d 762, 764, 24 A.L.R.2d 1393 (1951), it "is said to be satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market." Freeman, Able to Work and Available for Work, 55 Yale L.J. 123, 124 (1945); Beaman v. Safeway Stores, 78 Ariz. 195, 200, 277 P.2d 1010, 1013 (1954). There being no hard and fast rule as to when a claimant is actually "available for work", such must be determined from and in light of the circumstances of each case. Hunter v. Miller, 148 Neb. 402, 405, 27 N.W.2d 638, 640 (1947).

The purpose of the requirement that a claimant be "available for work" "is to test the claimant's attachment to the labor market. It is to determine if he is unemployed because of lack of suitable job opportunities or for some other reason such as physical incapacity or unwillingness to work." Roukey v. Riley, 96 N.H. 351, 352, 77 A.2d 30, 31 (1950).

■ Unless a claimant first demonstrates that he is *eligible* for benefits by a showing that he is, *inter alia,* "available for work" the question never arises as to whether he is *disqualified* from receiving compensation by his refusal to accept suitable employment.[5] One authority sees the relationship between the availability requirement and the work refusal disqualification to be as follows:

"The availability requirement, in statutory perspective, may be best viewed as a gross sieve designed to keep the patently unqualified from entering or staying in the benefit system. Thus it becomes a routine check of the claimants' circumstances. For claimants who pass this routine check there remains the more exact probe of the offer of suitable work."

\*    \*    \*    \*    \*    \*

"The fine sieve is the work offer, the secondary line of defense. The

---

4. Claimant returned to his former job in the ice plant at Citizens Utility Company on October 3rd, 1960.
5. A.R.S. § 23–776, subd. A, provides for disqualification from benefits "if the commission finds he has failed without good cause either to apply for available, suitable work, when so directed by the employment office or the commission, or to accept suitable work when offered him \* \* \*."

available claimant who refuses it, when the work is suitable and he has no good cause, becomes subject to disqualification. Because the work offer should be carefully adjusted to the claimant and his circumstances, it is not to be wasted on one who is clearly not in the labor force. The suggested argument saves availability from over-refinement and puts the onus of more precise adjustment where it belongs —on the work refusal disqualification."

Altman, Availability For Work, 94, 113 (1950).

This court has recognized that a claimant may be disqualified by reason of a work refusal without good cause and yet continue to be "available for work." Beaman v. Safeway Stores, supra, 78 Ariz. at 200, 277 P.2d at 1013. And of course conduct which approaches but does not constitute a work refusal so as to disqualify under Section 23–776 should not, without more, render one "unavailable for work" and therefore ineligible under Section 23–771. Nevertheless, there is a nexus between the availability requirement and the work refusal disqualification to the extent that a job refusal indicates lack of good faith and a general unwillingness to work. When that happens one has effectively removed himself from the labor

market and is no longer "available for work." See, e. g., Donnelly Garment Co. v. Keitel, 354 Mo. 1138, 193 S.W.2d 577 (1946); W. T. Grant Co. v. Board of Review of Unemp. Comp. Com., 129 N.J.L. 402, 29 A.2d 858 (1943); Hassey v. Unemployment Compensation Board of Review, 162 Pa.Super. 14, 56 A.2d 400 (1948).

Another factor necessarily related to claimant's availability is his conduct with respect to securing new work. See generally, Williams, Eligibility For Benefits, 8 Vand.L.Rev. 286, 290–306 (1955). As of 1958 the laws of 27 states required applicants for unemployment compensation to be "actively seeking work or making a reasonable effort to obtain work."[6] And this requirement of active search for work has been read into the availability requirement law by court decisions as well. See, e. g., Dan River Mills, Inc. v. Unemployment Compensation Com'n, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954). We think the actively seeking work requirement is inherent in the very meaning of "available for work."

▇ In at least one jurisdiction the act of registering for work at the unemployment office (see A.R.S. § 23–771, subd. 1) by the claimant is enough to raise a rebuttable presumption of availability. Bliley Electric Co. v. Unemployment Comp. Bd. of Rev., 158 Pa.Super. 548, 45 A.2d

6. U. S. Department of Labor, Bureau of Employment Security, Comparison of State Unemployment Insurance Laws, 85 (1958).

898 (1946). But Arizona is in accord with the majority rule that the burden of proving availability is upon the claimant and that the mere act of registration gives him no procedural advantage in establishing the merits of his claim. Vickers v. Western Electric Co., 86 Ariz. 7, 11–13, 339 P.2d 1033, 1036 (1959). See also Huiet v. Schwob Mfg. Co., 196 Ga. 855, 27 S.E.2d 743 (1943). In order that appeal to the Superior Court from a denial of benefits may be more than an empty right, however, it is required that such a finding be supported by "competent, material and substantial evidence in view of the entire record * * *." A.R.S. § 23–681, subd. D, par. 5. In this regard we quote with approval the language of Mr. Justice (then Judge) Brennan in Krauss v. A. & M. Karagheusian, 13 N.J. 447, 456, 457, 100 A.2d 277, 282 (1953) wherein he remarked that:

> " * * * the matter of burden of proof must necessarily be viewed in the light of the superior position in which the statute places the agency to enable it to know and get the facts to assure the correct discharge of its duty properly to allow or disallow benefits.[7]
>
> * * * * * *

7. See A.R.S. §§ 23–675 to 23–678.
8. It should be noted that in upholding this denial of benefits on the ground of unavailability we do not rely upon the factor that claimant during the week of September 17, 1960 failed to report to a temporary job in Fort Huachuca which is 65 miles from Nogales. Cf., Phelps Dodge Corp., etc., v. Industrial Commission, 90 Ariz. ——, 367 P.2d 270.

> "Plainly the statute casts upon the agency, as respects both original and appellate determinations, the role actively to press the interested parties to produce all relevant proofs at their command and, when necessary, independently to take steps to get the facts, as, for example, when the record made by the parties is unsatisfactory or there is fair reason to doubt the reliability of the proofs as a basis for decision or the agency in any case has reason to believe that additional facts obtained and made part of the record on its own initiative will contribute to a correct result."

■ In light of what has been said above we conclude that there is "competent, material and substantial evidence" in the record to support the Commission's decision that claimant was "unavailable for work" during the times specified. Claimant's behavior after being informed of the job opening at the Dam, when coupled with his testimony relating to attempts to secure other employment, disclosed at best only a passive interest in obtaining work.[8] He was not "genuinely attached to the labor market."

■ It is true that the Employment Security Act is remedial and should be

liberally construed in keeping with its beneficent purposes. But this rule alone cannot displace the requirement that claimant show why he is entitled to benefits under the act. Hunter v. Miller, supra, 148 Neb. at 404, 27 N.W.2d at 639. "The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases." Krauss v. A. & M. Karagheusian, supra, 13 N.J. at 455–56, 100 A.2d at 281.

For the reasons stated the judgment is affirmed.

BERNSTEIN, C. J., and STRUCK-MEYER, JENNINGS and LOCKWOOD, JJ., concur.