660 P.2d 1256

Bill M. **FERRIS**, Plaintiff-Appellee,

v.

Max **HAWKINS**, Director of Arizona Department of Administration, and the Arizona Department of Administration, State Personnel Board; Ellis MacDougall, Director of Arizona Department of Corrections, and the Arizona Department of Corrections, Defendants-Appellants.

No. 1 CA–CIV 5897.

Court of Appeals of Arizona,
Division 1, Department D.

March 10, 1983.

Community Legal Services by Catherine M. Hughes, Sp. Counsel and John R. Dacey, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by J. David Rich, Asst. Atty. Gen., Phoenix, for defendants-appellants.

## OPINION

MEYERSON, Judge.

In this appeal, we must decide whether a final judgment entered by the superior court in an unemployment compensation appeal may be given *res judicata* or collateral estoppel effect in an appeal from a decision of the State Personnel Board (Personnel Board) where both proceedings arose out of the discharge of the employee from the Department of Corrections (DOC). For the reasons explained below, we hold that the principles of collateral estoppel and *res judicata*[1] do not apply under these circumstances.

## I. FACTS

Plaintiff-appellee Bill M. Ferris was employed as a medical assistant at the Arizona State Prison for approximately one year prior to his discharge on May 23, 1978. Ferris drove from Phoenix to the state prison at Florence each day; because his wife had multiple sclerosis, he worked the graveyard shift so that he could care for her during the day. Following an alleged security violation, his work schedule was changed on very short notice to the day shift. Because he was unable to make suitable arrangements for the care of his wife, he missed several days work and was subsequently discharged for "[n]eglect of duty" pursuant to A.R.S. § 41–770.A.5.

Ferris filed a timely appeal of his dismissal to the Personnel Board and, following a hearing, on August 19, 1978, the termination was upheld. On September 11, 1978, Ferris initiated an action in superior court for judicial review of the Personnel Board decision.

Ferris also sought unemployment benefits through the Department of Economic Security (DES). DOC filed an untimely protest and did not appear at the hearing. After a hearing, a DES deputy determined that Ferris was discharged from his job for misconduct connected with work and disqualified Ferris from receiving benefits for ten weeks and reduced his total award by $680. That determination was upheld in a decision of the DES appeal tribunal on June 24, 1978. The tribunal found that Ferris was absent from his job for "noncompelling reasons [which] were reflective of a willful, wanton, and deliberate disregard of his employer's best interests. We conclude his discharge was for misconduct connected with the work." The tribunal found that Ferris did not present sufficient evidence to establish that the condition of his wife's health was such as to preclude him from reporting to work. A final decision by former DES Director William Jamieson, Jr., affirming the tribunal's ruling was issued on October 3, 1978. Ferris then brought suit against DES, Jamieson, and DOC seeking review of the decision denying his unemployment claim.

On March 18, 1980, the superior court judge reversed DES and concluded that the

---

1. *Res judicata,* argued briefly by Ferris' counsel at oral argument, has no applicability to this case because the same claim, *Yavapai County v. Wilkinson,* 111 Ariz. 530, 531, 534 P.2d 735, 736 (1975), was not litigated in the unemployment and personnel matters.

decisions of the appeal tribunal and the DES director were arbitrary, capricious, unsupported by the evidence, and an abuse of discretion. The court found that the conduct of DOC in shifting Ferris' work schedule on short notice and then denying his request for leave without pay in order for him to find someone to care for his wife was "utterly outrageous and shocking." The court concluded that Ferris presented evidence demonstrating that his wife's condition prevented him from leaving her unattended and that all of the major findings and conclusions of DES had no support in the record. The court found that the dismissal "literally reeks with fundamental unfairness and heavy handedness . . . ." Neither DOC nor DES appealed the judgment.

On April 21, 1980, Ferris moved for summary judgment in the personnel matter, the action below, on the grounds of collateral estoppel contending that the issue of whether Ferris was discharged with good cause under A.R.S. § 41–770 was necessarily determined in his favor in the unemployment litigation. On February 11, 1981, summary judgment was entered on behalf of Ferris. He was awarded back pay in the amount of $17,715.77, reinstatement to his job, and continuing damages for back pay from the date of judgment to the date of his reinstatement. An appeal was thereupon taken from that judgment.

## II. COLLATERAL ESTOPPEL

The state appellants make a number of contentions with respect to the inapplicability of collateral estoppel to the present case. It is for one principal reason, however, that we decline to rely upon this doctrine in the context of the interrelationship between the unemployment compensation statutes and the state personnel statutes. Because of the dissimilar and unrelated purposes between the two statutory schemes and the drastic difference in their respective remedies, we conclude that collateral estoppel does not apply under circumstances such as are present here.

■ We recognize that *res judicata* and collateral estoppel "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Principles of issue preclusion should not be applied, however, where "there is some overriding consideration of fairness to a litigant, which the circumstances of the particular case would dictate." *Di Orio v. City of Scottsdale*, 2 Ariz.App. 329, 332, 408 P.2d 849, 852 (1965).

For example, in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court refused to bar an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. (prohibiting employment discrimination) where the employee had submitted his claim to an arbitrator under the non-discrimination clause of a collective-bargaining agreement and the arbitrator ruled that the employee had been fired for cause. The Court recognized that the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Id.* at 50, 94 S.Ct. at 1020.[2]

---

**2.** In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court held that a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim. Relying primarily upon the obligation of the federal courts to afford full faith and credit to state court judgments, the Court distinguished its holding in *Gardner-Denver* by noting that the state statutory right in *Kremer* was subject to state enforcement in a manner expressly provided for by Title VII. *Id.* at 1895. "[S]tate fair employment practice laws are explicitly made part of the Title VII enforcement scheme." *Id.* The principle that preclusion would not be applicable in cases involving "distinctly separate" rights was reaffirmed by the Court. Although in *Gardner-Denver* the issue was framed as one of election of remedies, the underlying logic directly applies to cases involving issue preclusion.

In *Garner v. Giarrusso,* 571 F.2d 1330 (5th Cir.1978), the court held that a determination made by the city's civil service commission was not *res judicata* with respect to the plaintiff's federal employment discrimination claims. At the outset, the court stated that "neither res judicata nor collateral estoppel is rigidly applied. Both defenses must be qualified or rejected where their use would contravene an overriding public policy or result in manifest injustice." *Id.* at 1336. The court held, among other things, that the civil service commission was not a "competent forum" for the resolution of the federal claims of employment discrimination. *Id.* The court found that the commission's function was to determine whether the plaintiff had breached the police department regulations. The commission was not asked to remedy any discriminatory practices which might have occurred. The court concluded that had *res judicata* been applied to bar the plaintiff's subsequent lawsuit, "manifest injustice would have occurred because [the plaintiff] would have been deprived of an opportunity to challenge the department's transfer, assignment, and re-evaluation practices." *Id.* at 1336–37.

In *Stafford v. Muscogee County Board of Education,* 688 F.2d 1383 (11th Cir.1982) the court held that the plaintiff was not barred from proceeding with his federal discrimination claims by virtue of an adverse administrative determination under Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d et seq. (prohibiting discrimination under federally assisted programs) made by the Office of Civil Rights of the former Department of Health, Education and Welfare. The court found that the remedies under Title VI differed significantly from those provided under Title VII and under 42 U.S.C.A. § 1981 (prohibiting racial discrimination in contractual relations) and

that in "light of the congressional purpose underlying the civil rights laws ... and the nature of the proceedings before HEW," *id.* at 1392, *res judicata* was found inapplicable.

█ Because we find that Ferris' claim for unemployment compensation and his action for reinstatement involve "distinct" legal rights and that the remedies available under each statutory scheme are markedly different,[3] we hold that the litigation of Ferris' discharge in his suit for unemployment compensation cannot be asserted by way of collateral estoppel or *res judicata* to preclude the determination of the propriety of his discharge in the personnel litigation. In our view, to apply principles of issue preclusion under these circumstances would defeat the intent of the legislature and the salutary purposes underlying the unemployment compensation statute as well as the purpose behind the creation of the Personnel Board.

Unemployment compensation is a "social security" measure which is designed to alleviate the "burden which ... falls with crushing force upon the unemployed worker and his family." A.R.S. § 23–601. The central purpose of our employment security act, establishing within Arizona a system of unemployment compensation, is to allow compensation for a limited period of time to those capable of working and available for work who are involuntarily unemployed through no fault of their own. *Vickers v. Western Electric Co.,* 86 Ariz. 7, 339 P.2d 1033 (1959). A worker who obtains unemployment compensation is not entitled to reinstatement nor is he entitled to lost wages during the period of his unemployment. Quite simply, he is entitled to a statutorily prescribed unemployment benefit which is less than his salary and which lasts for a limited duration of time.

---

**3.** According to the DES deputy's determination, the amount in controversy in the unemployment case would be $1,530. The amount in controversy in the personnel matter was $17,715.77 plus reinstatement. Issue preclusion should not apply where because of "special circumstances" the party sought to be precluded "did not have an adequate opportunity

or incentive to obtain a full and fair adjudication in the initial action." Restatement Second of Judgments § 28(5) (1982). "[T]he amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." *Id.* at comment (j).

On the other hand, one of the key functions of the Personnel Board is to hear and review appeals in personnel matters arising out of state employment. It is available to employees who are dismissed, suspended, or demoted after completion of their probationary period. A.R.S. § 41–785 (Supp. 1982). In a proceeding under the personnel legislation, an employee may obtain reinstatement as well as back pay. *See Lewis v. Jamieson,* 135 Ariz. 322, 660 P.2d 1249 (Ct.App. 1983). The court on review is required to consider the record of the proceedings before the Personnel Board and it may affirm the order of the board, remand the matter for further proceedings, or reverse or modify the order. A.R.S. § 41–785.F. (Supp.1982). It is our judgment that the legislature did not intend that the merits of a personnel dispute, the resolution of which is governed under a carefully mandated statutory scheme, be decided in a completely and totally separate unemployment compensation proceeding. To accept Ferris' argument would nullify the functioning of the Personnel Board in any case where the employee's discharge is at issue in a pending unemployment case and where that issue is resolved prior to the resolution of the personnel matter.

Furthermore, if we were to adopt the position advocated by Ferris, we would create an incentive for the state, acting in its capacity as an employer, to vigorously and consistently oppose a discharged employee's claim for unemployment benefits. The result would be to turn the unemployment compensation hearing into a litigation of the merits of the personnel claim. The ultimate effect would be that the state's superior resources would interfere with the beneficial purpose of the unemployment compensation laws.

We recognize that our holding is at odds with a number of other reported federal decisions. *E.g., Davis v. United States Steel Supply,* 688 F.2d 166 (3d Cir.1982) (state court determination that employer did not violate city human relations ordinance barred employee's federal court suit filed under 42 U.S.C.A. § 1981); *O'Connor v. Mazzullo,* 536 F.Supp. 641 (S.D.N.Y.1982) (state agency determination that employees were not discharged for union activities precluded consideration of similar claims in federal court action). Indeed, at least one court has held that a state agency determination that an employee is not entitled to unemployment benefits bars a federal action under 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1985. *Gear v. City of Des Moines,* 514 F.Supp. 1218 (S.D.Iowa 1981).

The foregoing cases strictly apply the doctrines of *res judicata* and collateral estoppel. We believe that they do not appropriately balance the respective policy considerations underlying the various statutory rights and remedies which are at issue. The judicial efficiency which can be obtained through application of principles of issue preclusion must give way where their rigid application would result in frustration of legislative purpose. Because of the totally distinct and separate nature of the rights and remedies under the unemployment compensation act and the Personnel Board legislation, we find that this is a case in which the legislative policy underlying each statutory scheme can only be achieved by allowing litigants a full and fair opportunity to independently present their respective claims in each forum.

Accordingly, the judgment of the trial court is reversed and this matter remanded for proceedings consistent with this opinion.

HAIRE, P.J., and EUBANK, J., concur.