STARING, Presiding Judge:
¶ 1 In this special action, we conclude the doctrine of collateral estoppel, also *1114 known as issue preclusion, does not bar the State of Arizona from prosecuting a person for child abuse after a juvenile court found in a separate dependency action that he did not abuse the child in question and dismissed a dependency petition that was based solely on that alleged abuse. Consequently, the respondent judge did not err in denying petitioner Nikolas Crosby-Garbotz's[2] motion to dismiss the underlying criminal action.
Factual and Procedural Background
¶ 2 The following facts are either undisputed or established by the record before us. Pursuant to A.R.S. § 13-3623(A)(1), Crosby has been charged with abusing his daughter, C. She was born prematurely in February 2016 and remained in the hospital for almost two weeks after her birth. On July 5, 2016, when C. was approximately five months old, Crosby called 9-1-1 and stated she was unresponsive and appeared to be having a seizure. Paramedics transported C. to the hospital, where doctors determined she had a subdural hematoma, retinal hemorrhaging in both eyes, and retinoschisis, or splitting of the layers in the eye. C. had no external injuries, skull fractures, or other signs of physical trauma.
¶ 3 The Arizona Department of Child Safety (DCS) took temporary custody of C. and filed a dependency petition, alleging that Crosby had abused her, based on the definition of abuse in A.R.S. § 8-201(2), and that C. was dependent pursuant to § 8-201(15)(a)(i) or (iii). The dependency hearing began in November 2016 and concluded in February 2017, after eleven sessions. At the hearing, Crosby testified that since she was about three months old, C. had suffered "recurrent, but intermittent and persistent bouts of irritability and lethargy" and periods during which she "would become inconsolable," and that there were "multiple instances of projectile vomiting." He stated that on the morning in July, she had been "crying" and "fussy" and then had a seizure in his arms.
¶ 4 DCS and Crosby each presented two medical experts during the hearing. DCS's experts opined that C.'s injuries were not accidental and were the result of abuse, most likely "Shaken Baby Syndrome" (SBS). Crosby's experts, on the other hand, testified SBS has been discredited as an explanation for the kinds of injuries suffered by C. They opined C. could not have sustained her injuries as a result of shaking. Further, they opined that, other than the hematoma, there were no signs of abuse or trauma, and, in any event, there was no evidence C. had been shaken vigorously, such as bruising or neck trauma. Crosby's experts testified it would have been impossible for C. to have sustained a head injury of the kind alleged without some additional injury. They surmised that given C.'s medical history, which included premature birth and previous symptoms of vomiting and lethargy, the more likely explanation was that she had a dormant or chronic subdural hematoma, perhaps caused by viral encephalitis.
¶ 5 In March 2017, the juvenile court issued an under-advisement ruling in the dependency case, concluding DCS had not sustained "its burden of proving by a preponderance of the evidence that ... Crosby inflicted physical injury, impairment of body function, or disfigurement to" C. The court found the evidence Crosby had presented "controverts or sufficiently calls into question the State's medical position that [C.]'s injuries were sustained only as a result of being violently shaken by the Father," positing it was more likely C. had a chronic subdural hematoma that was aggravated when she bumped her head on her crib. The court also concluded DCS had not sustained its burden of showing the mother had neglected C. by failing to protect her, "[a]s the Court has found that it is more likely than not that [Crosby] did not injure" C. The court therefore dismissed the dependency petition.
¶ 6 In December 2016, before the dependency case had concluded, the state charged Crosby with child abuse under § 13-3623(A)(1). In presenting the charge to the grand jury, a police detective testified Crosby had been caring for then-five-month-old C. while his wife, C.'s mother, was at work, and he had called 9-1-1 to report C. was *1115 unresponsive and had shown seizure-like behavior. The detective testified medical tests had revealed C. had a subdural hematoma, "a type of brain bleed, ... extensive retinal hemorrhaging in both eyes, as well as retinoschisis." He stated, "[P]er doctors, retinoschisis is from a very significant force, such as a high speed motor vehicle accident, multiple skull fractures from a crushing-type injury, a fall from a significant height or abusive head trauma." He added that C. did not have any external injuries and did not appear to have a bleeding disorder, but that Crosby had admitted he bounced her up and down on his chest when she became fussy, but denied he had shaken her. The detective informed the grand jury C. was still under the care of a neurologist and an ophthalmologist but it was unknown whether she would suffer permanent vision impairment. The grand jury returned an indictment on the charge.
¶ 7 Crosby filed a motion to remand the case to the grand jury for a new finding of probable cause, pursuant to Rule 12.9, Ariz. R. Crim. P. After a hearing, the respondent judge denied the motion in May 2017. Crosby then filed a motion to dismiss the charge based on collateral estoppel, arguing the state could not relitigate the issue of whether he had abused C. The respondent denied the motion after a hearing in August. In this special action, Crosby challenges the denial of both motions.
Special-Action Jurisdiction
¶ 8 The denial of a motion to dismiss a prosecution is an interlocutory order not subject to direct appeal. Nowell v. Rees , 219 Ariz. 399, ¶ 10, 199 P.3d 654 (App. 2008). It can, however, be challenged on appeal following a conviction. See State v. Moody , 208 Ariz. 424, ¶ 22, 94 P.3d 1119 (2004) (denial of motion to dismiss charges raisable on appeal but special-action review preferred when motion raises double-jeopardy claim). Ordinarily, the existence of a remedy by appeal weighs against accepting special-action jurisdiction, see Ariz. R.P. Spec. Act. 1(a), but, in our discretion, we may nevertheless review the denial of a motion to dismiss in a special action when there are other reasons for accepting jurisdiction, such as when the issue raised is a pure question of law. See Lewis v. Warner , 166 Ariz. 354, 355, 802 P.2d 1053, 1054 (App. 1990). Whether collateral estoppel applies is a question of law. See Tripati v. Forwith , 223 Ariz. 81, ¶ 23, 219 P.3d 291 (App. 2009) ; see also Fitzgerald v. Superior Court , 173 Ariz. 539, 543, 845 P.2d 465, 469 (App. 1992) (accepting special-action jurisdiction to review denial of motion to dismiss charges based on claims of double jeopardy and collateral estoppel). In addition, whether the state is precluded from pursuing criminal prosecution because of a finding in a dependency action-a commonly occurring and accelerated[3] process that can have implications concerning child safety and family preservation-is an issue of statewide importance, a fact that provides a compelling reason for accepting special-action jurisdiction. See Taylor v. Cruikshank , 214 Ariz. 40, ¶ 2, 148 P.3d 84 (App. 2006). For these reasons, we accept jurisdiction of this special action to review the denial of Crosby's motion to dismiss.[4] But, as discussed below, because the respondent did not abuse his discretion in denying Crosby's motion to dismiss, we deny relief. See Ariz. R. P. Spec. Act. 3(c) (special-action relief appropriate when respondent abuses discretion).
*1116 Discussion
¶ 9 Under the doctrine of collateral estoppel, "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Fitzgerald , 173 Ariz. at 546, 845 P.2d at 472, citing Ashe v. Swenson , 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and State v. Stauffer , 112 Ariz. 26, 536 P.2d 1044 (1975). Collateral estoppel serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry , 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ; see also Fitzgerald , 173 Ariz. at 546, 845 P.2d at 472. Notably, however, although collateral estoppel may apply in criminal proceedings, even when the issue was decided in a prior civil action, Yates v. United States , 354 U.S. 298, 335, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States , 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and although Fitzgerald remains good law, our supreme court has made clear that the doctrine is not favored in criminal cases and should be applied sparingly. State v. Goudeau , 239 Ariz. 421, n.8, 372 P.3d 945, n.8 (2016) ; see also State v. Rodriguez , 198 Ariz. 139, ¶ 6, 7 P.3d 148 (App. 2000).
¶ 10 In Fitzgerald , upon which Crosby relies, we determined that a court's finding in a civil forfeiture proceeding precluded the state from bringing related criminal charges. 173 Ariz. at 548, 845 P.2d at 474. In the forfeiture proceeding, the court found that the defendant had established by a preponderance of the evidence that he had not possessed and used guns and drug paraphernalia seized from him "for any criminal activity." Id. In the criminal action, the court found the state was estopped "from establishing the identical issues regarding [the] defendant's intent and use of these items necessary to prove" beyond a reasonable doubt that he had committed weapons misconduct and possession of drug paraphernalia. Id. We concluded all elements of collateral estoppel existed: "the same parties were involved in both actions"; the state agency that prosecuted the forfeiture, the party against whom the principle was being applied, " 'had a full and fair opportunity' to litigate the issue involved"; the same issue that was to be litigated in the criminal case had been determined in the forfeiture proceeding; and, a final judgment was entered in the forfeiture action. Id. at 546, 845 P.2d 465, quoting Kremer v. Chem. Constr. Corp. , 456 U.S. 461, 480, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).
¶ 11 In denying Crosby's motion, the respondent judge appeared to rely primarily on Ferris v. Hawkins , 135 Ariz. 329, 660 P.2d 1256 (App. 1983), which this court decided almost a decade before Fitzgerald . The question in Ferris was "whether a final judgment ... in an unemployment compensation appeal may be given ... collateral estoppel effect in an appeal from a decision of the State Personnel Board ... where both proceedings arose out of the discharge of the employee from the Department of Corrections." Id. at 330, 660 P.2d at 1257. The "principal reason" this court refused to apply collateral estoppel in that case was "the dissimilar and unrelated purposes between the two statutory schemes and the drastic difference in their respective remedies." Id. at 331, 660 P.2d at 1258.
¶ 12 We examined the legislative policies and purposes behind statutes designed to provide temporary relief to those who are capable of and willing to work but are suddenly unemployed, and the processes governing employment matters for state employees. Id. at 332-33, 660 P.2d at 1259-60. "Unemployment compensation is a 'social security' measure," we observed, "which is designed to alleviate the 'burden which ... falls with crushing force upon the unemployed worker and his family.' " Id. at 332, 660 P.2d at 1259, quoting A.R.S. § 23-601. Personnel board proceedings, however, are available to certain state employees who have been dismissed, suspended, or demoted, and the available remedies include reinstatement or back pay. Id. at 333, 660 P.2d at 1260. We stated that we did not believe "the legislature ... intend[ed] that the merits of a personnel dispute, the resolution of which is governed under a carefully mandated statutory *1117 scheme, be decided in a completely and totally separate unemployment compensation proceeding." Id.
¶ 13 Here, the respondent judge reasoned the legal issues and remedies in dependency and criminal proceedings are different, as are the "statutory schemes." Agreeing with the state, he found the central issue in the juvenile proceedings was whether C. was dependent, not whether Crosby committed a criminal act. The respondent concluded Crosby's argument was "weakest on the traditional element of collateral estoppel": the requirement that the issue to be litigated is "precisely the same [as the] issue in the previous litigation," based, first, on a comparison of the statutes.
¶ 14 Relying primarily on Fitzgerald , Crosby argues, as he did below,[5] the respondent erred because all four elements of collateral estoppel exist here, as do the purposes and policy goals underlying the doctrine. Crosby insists the respondent "misapplied the law surrounding collateral estoppel," and he maintains Fitzgerald , not Ferris , "provides the proper analysis" because the instant case is more like the former than the latter. Crosby also relies on Lockwood v. Superior Court , 160 Cal.App.3d 667, 206 Cal.Rptr. 785 (1984), in which the court applied collateral estoppel in a criminal prosecution, precluding the state from relitigating an issue decided against it in a prior dependency action.
¶ 15 The undisputed facts as well as the record before us establish the sole basis for DCS's allegation that C. was dependent pursuant to § 8-201(15)(a)(i) or (iii)[6] was that Crosby had abused C., most likely by shaking her too vigorously when she had become fussy that morning in July 2016. Section 8-201(2) defines abuse as including "the infliction or allowing of physical injury, impairment of bodily function or disfigurement...."
¶ 16 In the criminal case, Crosby has been charged with abuse of a child under the age of fifteen years pursuant to § 13-3623(A)(1) by intentionally or knowingly, under circumstances likely to produce death or serious physical injury, causing physical injury to C., specifically, "brain and retinal bleeding and retinoschisis." The charge follows the language of the statute, which states: "Under circumstances likely to produce death or serious physical injury, any person who causes a child ... to suffer physical injury or, having the care or custody of a child ... who causes or permits the person or health of the child ... to be injured ... is guilty of" a class two felony if the offense is "done intentionally or knowingly." Id.
¶ 17 Applying the elements of collateral estoppel here, the factual issue decided by the juvenile court in its final judgment-that Crosby had not injured C.-is the same issue that underlies the criminal prosecution. The question whether Crosby had abused C. by shaking her, and thereby inflicted the injuries she sustained, was litigated in the dependency action. DCS and Crosby presented the testimony of their respective experts and other witnesses, including a DCS investigator, other DCS personnel, and therapists. Both parents testified, and records and reports, including medical records, were admitted. In its under-advisement ruling, the juvenile court not only made clear that DCS had failed to sustain its burden of proving the allegations of the dependency petition by a preponderance of the evidence, see A.R.S. § 8-844(C) ; it also found the evidence showed it was "more likely than not" that Crosby did not injure C.
*1118 ¶ 18 The last element of collateral estoppel requires that the subsequent proceeding be between "the same parties or their privities." Hall v. Lalli , 194 Ariz. 54, ¶¶ 6-7, 977 P.2d 776 (1999). Crosby argues that the state was a party to the dependency proceeding, albeit through DCS, represented by the Arizona Attorney General, and that it is also the prosecuting entity in this criminal proceeding brought by the Pima County Attorney. He points to the supervisory relationship between the attorney general and the county attorney, arguing this demonstrates they are not distinct parties. In the criminal proceeding and this special action, however, the state insists it is not the same party as DCS. It argues that the counties independently prosecute criminal proceedings whereas the attorney general represents the various departments and distinct political subdivisions of the state. The state also asserts counties have no authority in dependency proceedings and DCS has no authority in criminal prosecutions. The disposition of this special action, however, does not require us to resolve the question of mutuality or privity of parties. Like the majority of other jurisdictions that have addressed the applicability of collateral estoppel in this context, we find compelling reasons not to preclude Crosby's criminal prosecution on the basis of the ruling in the dependency case.
¶ 19 As previously noted, Crosby relies on the California Court of Appeals' decision in Lockwood in support of his argument that a finding in a dependency proceeding should be given preclusive effect in a subsequent criminal prosecution for the same conduct. We agree with Crosby that Lockwood is not meaningfully distinguishable from the case before us. There, the juvenile court had dismissed a dependency petition against the parents based on the same facts that gave rise to a charge of felony child abuse. 206 Cal.Rptr. at 786. The appellate court granted the parents' petition for an extraordinary writ following the trial court's denial of their motion to dismiss those charges. Id.
¶ 20 Although the Lockwood court agreed with the state that the purposes of dependency and criminal proceedings are different, it found those differences were not dispositive of whether collateral estoppel applied. Id. at 787. The court observed, "The narrow issue litigated in the dependency proceeding was whether the parents had cruelly inflicted the child's injuries upon him. The juvenile court expressly found no such abuse." Id. at 788. Because the criminal charge was based on willful injury of the child, the court concluded, all elements of collateral estoppel existed. Id.
¶ 21 In People v. Percifull , 9 Cal.App.4th 1457, 12 Cal.Rptr.2d 331, 331-32 (1992), however, a different district of the appellate court refused to follow Lockwood . In light of the California Supreme Court's post- Lockwood decision in Lucido v. Superior Court , 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990), the court reversed the trial court's application of collateral estoppel to bar a criminal prosecution against parents after a ruling in their favor in a related dependency proceeding. Percifull , 12 Cal.Rptr.2d at 333-35. For policy reasons, the court in Lucido had refused to apply collateral estoppel to bar a prosecution for indecent exposure, notwithstanding a decision in a probation revocation proceeding that the defendant did not commit the offense. 272 Cal.Rptr. 767, 795 P.2d at 1229-33.
¶ 22 Other jurisdictions have either rejected Lockwood or simply reached a different result. In People v. Wouk , 317 Ill.App.3d 33, 250 Ill.Dec. 603, 739 N.E.2d 64, 69-70 (2000), for example, the Illinois Court of Appeals concluded that dismissal after a hearing on the state's request for an order of protection for the defendant's former wife did not preclude the state from prosecuting the defendant for domestic battery. The court found that, as in Lockwood , the issues in the protective order and criminal proceedings were the same and all other elements of collateral estoppel existed. Id. 250 Ill.Dec. 603, 739 N.E.2d at 69. Rejecting Lockwood , however, the court reasoned that collateral estoppel should not apply unless it is clear that there is no unfairness to the party being estopped. Id. 250 Ill.Dec. 603, 739 N.E.2d at 69-70, citing Restatement (Second) of Judgments § 28 (1982) (collateral estoppel should not apply when there is adverse impact on public interest). The court observed that protective *1119 orders are designed to be resolved quickly, the burden of proof is a preponderance of the evidence, and the focus is on protecting the family, not prosecuting and punishing a person who committed a criminal act. Id. 250 Ill.Dec. 603, 739 N.E.2d at 70.
¶ 23 A few months after it decided Wouk , the same court decided People v. Moreno , 319 Ill.App.3d 445, 253 Ill.Dec. 173, 744 N.E.2d 906, 907, 912 (2001), affirming the denial of a defendant's motion to dismiss charges of aggravated battery of a child on the ground that every contested factual issue to be tried in the criminal case had been resolved in her favor in a wardship, or dependency proceeding. The defendant relied on a case in which the court had found a favorable ruling in a civil forfeiture action had estopped the state from bringing a criminal action based on the same issue of whether the defendant's car had been used to facilitate unlawful delivery of controlled substances. Id. 253 Ill.Dec. 173, 744 N.E.2d at 910. Citing Percifull and the Washington Court of Appeals' decision in State v. Cleveland , 58 Wash.App. 634, 794 P.2d 546 (1990), the Moreno court found there were important public policy reasons not to apply collateral estoppel in the wardship context. 253 Ill.Dec. 173, 744 N.E.2d at 911-12. The court noted that in a dependency, "the State's purpose is protection of defendant's minor children; in the criminal proceeding, the State's purpose is discovering if defendant injured G.M. and punishing her if found guilty." Id. 253 Ill.Dec. 173, 744 N.E.2d at 912. It added that these differences may have a bearing on the state's actions in each of the two proceedings. Id. The court also noted that the record suggested the state had not presented all the evidence in the dependency proceeding that it could or intended to present at a criminal trial. Id.
¶ 24 In Cleveland , based on "overall considerations of public policy," the court rejected applying collateral estoppel to bar the state from prosecuting the defendant for child sexual abuse where a court had found in a related dependency proceeding that the state had failed to prove he had committed the alleged abuse. Cleveland , 794 P.2d at 547, 551. The appellate court reasoned that "[d]ependency proceedings are often attended with a sense of urgency, are held as promptly as reasonably possible, and the entire focus of the proceeding is the welfare of the child." Id. at 551. It also surmised that because the focus is more narrow, "the State normally does not need, nor does it perform, the extensive preparation typically required for felony trials." Id. Consequently, the court added, greater resources are typically available to the state in conducting a criminal prosecution than are utilized or available in a dependency. Id.
¶ 25 Moreover, the Cleveland court was concerned that, if the state knew findings in dependency proceedings could preclude criminal charges, it might become reluctant "to conduct dependency proceedings in cases where one or more of the same issues would arise in subsequent criminal prosecutions." Id. The court acknowledged the crucial importance of safeguarding children, but simultaneously recognized the critical importance "of not impeding enforcement of the criminal law when no overriding consideration requires it." Id.
¶ 26 Similarly, the Michigan Supreme Court refused to apply collateral estoppel to bar a prosecution for sexual misconduct with a child after a dependency court had entered a ruling favorable to the defendant based on the same conduct. People v. Gates , 434 Mich. 146, 452 N.W.2d 627, 628, 633-34 (1990), cert. denied , 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990). The court stated that a contrary decision would place prosecutors in the position of having to choose between proceeding with a dependency action "because of concern for the child," or delaying it out of "concern that a verdict of nonjurisdiction would preclude criminal prosecution of the accused." Id. at 633-34. Like the Illinois Court of Appeals in Wouk , 250 Ill.Dec. 603, 739 N.E.2d at 69-70, the Gates court quoted and relied on Restatement § 28 and its exceptions to the application of collateral estoppel to serve the following policies: "A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts" or "because of the potential adverse impact of the determination on the public interest or *1120 the interests of persons not themselves parties in the initial action." Gates , 452 N.W.2d at 633 n.18, 634.
¶ 27 Further, in Criner v. State , 138 So.3d 557, 558, 560 (Fla. Dist. Ct. App. 2014), an appeal from a conviction for three counts of child molestation, the court rejected the defendant's claim that the trial court had erred by denying his motion to dismiss criminal charges based on collateral estoppel. In an earlier proceeding to terminate the defendant's parental rights, the court had found the Department of Children and Families had failed to prove by clear and convincing evidence that he had committed the same acts. Id. at 558. The Criner court relied in part on State v. Freund , 626 So.2d 1043 (Fla. Dist. Ct. App. 1993), which had concluded the trial court erred by applying collateral estoppel to dismiss a criminal charge of child neglect based on the dismissal of a dependency petition arising from the same conduct. 138 So.3d at 558-60, quoting Freund , 626 So.2d at 1045-46. The court in Freund had found persuasive the policy reasons articulated in Cleveland and Gates for not applying collateral estoppel in this context. Id.
¶ 28 We find these cases highly persuasive for not applying collateral estoppel here. We are particularly concerned that permitting the doctrine to apply in this context could cause the state to forego dependency proceedings because of the possibility it would be precluded from relitigating the underlying issues in a criminal proceeding, with the potential effect of further endangering children. Similarly, to avoid application of collateral estoppel, the state might be compelled to present its entire criminal case in the dependency proceeding, which could unnecessarily complicate and delay the adjudication, placing an undue burden on the juvenile court system. In sum, the distinction between juvenile and criminal proceedings would be impermissibly blurred, and the state could be forced to shift its focus from the best interest of the child, which includes efforts to preserve and reunify the family, to establishing that a criminal act was committed.
¶ 29 Finally, we decline to adopt a case-by-case approach to claims of collateral estoppel arising from decisions in dependency actions. Given the policy considerations discussed at length above, the urgency of dependency proceedings and, most importantly, the need to protect children from harm, we conclude a bright-line rule against applying collateral estoppel in this context best serves the litigants, their attorneys, the courts of this state, and the public.
Disposition
¶ 30 For the foregoing reasons, although we accept special-action jurisdiction, we deny relief.

Crosby-Garbotz refers to himself as Crosby in his petition; therefore, we will do the same.

For example, A.R.S. § 8-842(C) directs that ordinarily "the dependency adjudication hearing shall be completed within ninety days after service of the dependency petition." See Joshua J. v. Ariz . Dep't of Econ . Sec. , 230 Ariz. 417, ¶ 17, 286 P.3d 166 (App. 2012) ("The 90-day time limit for the completion of a dependency hearing protects children's health and safety as well as the fundamental rights of parents regarding their children."). And, "absent waiver of the parties, the juvenile court is obligated to adhere to the deadlines found within our dependency statutes in order to comply with the Legislature's intent." Id. ¶ 21.

As noted, Crosby also challenges the respondent's denial of his Rule 12.9 motion. Although a special action is the only means of obtaining appellate review of such a ruling, see State v. Snelling , 225 Ariz. 182, ¶ 11, 236 P.3d 409 (2010), Crosby has not provided this court with a copy of the motion or a transcript of the hearing on the motion. Because we cannot meaningfully review the respondent's ruling to determine whether he abused his discretion, see Ariz. R.P. Spec. Act. 3(c), we decline to accept jurisdiction concerning that issue and do not address it.

Crosby did not provide this court with a copy of the motion to dismiss, the state's response, or his reply. However, he has provided a transcript of the hearing on the motion, which reflects his arguments, the state's responses, the respondent's consideration of the arguments, and the reasons for the ruling. Moreover, the state does not dispute Crosby's characterization of the arguments he raised below. Rather, it refutes them and asserts the respondent correctly ruled collateral estoppel does not apply here because there is no privity of parties and the issues in the criminal proceeding are not the same as the issues in the dependency.

The statute defines a dependent child as a child adjudicated to be "[i]n need of proper and effective parental care and control and ... who has no parent or guardian willing to exercise or capable of exercising such care and control," or "[a] child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent...." § 8-201(15)(a)(i), (iii).