THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRANISLAV KRSTIC, Defendant-Appellee.

First District (6th Division)   No. 1—96—4251

Opinion filed September 30, 1997.

Ellen R. Rubin, of Northbrook, for appellee.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

The People of the State of Illinois, through Richard A. Devine, the State's Attorney for the County of Cook, Illinois (the State), appeal from an order entered by Judge William P. O'Malley in the circuit court of Cook County dismissing a misdemeanor prosecution against defendant, Branislav Krstic. Judge O'Malley dismissed the charges of domestic battery and violation of an order of protection against defendant because Judge Aubrey Kaplan, in the domestic relations division of the circuit court, had entered a finding of "no abuse" based on the same events. Without holding further, we find that the State may not be collaterally estopped from pursuing a subsequent criminal prosecution when the State was not a party to the initial proceeding, whether civil or criminal. Accordingly, we reverse Judge O'Malley's order dismissing the criminal prosecution.

On May 31, 1996, Dusanka Krstic (Dusanka) filed a *pro se* petition seeking an order of protection against her husband, Branislav Krstic (defendant), from the circuit court of Cook County, domestic relations division, based on events that occurred on the morning of May 29, 1996. 750 ILCS 60/214(c)(1)(i) (West 1996). The petition was filed within the Krstics' ongoing divorce proceeding (*In re Marriage of Krstic*, case No. 94—D—18642), and sought to order defendant: (1) to stay away from Dusanka; (2) to remain in the country; (3) to turn over certain accounting books; and (4) not to spend marital assets. The petition also sought to grant Dusanka temporary legal custody of the minor children and exclusive possession of a 1994 Pontiac.

Based on the same events alleged in the petition for an order of protection, Dusanka filed a misdemeanor complaint charging defendant with domestic battery and violation of an order of protection. 720 ILCS 5/12—3.2(a)(1), 12—30 (West 1996).

On June 24, 1996, Judge Kaplan in the domestic relations division held a hearing on Dusanka's petition. As adduced at the hearing, Dusanka alleged that on May 29, 1996, defendant became upset with her when she answered the telephone and received a personal call for defendant. According to Dusanka, defendant threatened her that, "if I deal in his personal businesses, he'll kill me. He'll kill me and I will not be found." Defendant then "took his foot and he—exactly like a baseball hit—hit my foot."

Afterward, Dusanka tried to stand up and telephone the police but the defendant would not let her use the phone. When the defendant walked away, Dusanka allegedly called the apartment manager, Barbara Martinson, and asked her to call the police. Dusanka waited for the police to arrive but they never did. Dusanka then went to call the police herself but apparently the phone was dead. She then tried to contact two neighbors, neither of whom answered their doors. Dusanka then got dressed and went downstairs to call the police.

In the manager's office, Dusanka asked Martinson why she had not called the police to which Martinson replied that the defendant had been there. Defendant tried to chase Dusanka out of the office. Dusanka then called the police. When the police arrived, they accompanied Dusanka to the apartment. The phone was working. The police then took Dusanka to St. Joseph Hospital, where she was prescribed pain pills. Dusanka explained that the doctor found no visible sign of injury, "only little red scrape on the back of the leg and in about ten days it will hurt even more."

Defendant testified that he had left the apartment and had been working the entire time when Dusanka called the manager's office ranting and raving about calling the police. Defendant stated that he had several witnesses who could testify regarding his whereabouts that morning.

Noting that there had been a great deal of extraneous evidence at the hearing, Judge Kaplan stated the only issue "is whether or not he kicked her at the date and time that appears in this petition." After hearing all of the evidence, Judge Kaplan entered a finding of no abuse regarding the events of May 29, 1996. Judge Kaplan was not informed of a prior order of protection issued against defendant on February 24, 1995, in the same case, which ordered defendant to stay away from Dusanka and not to remove their two minor children from Dusanka.

The criminal prosecution, which had been stricken, was reinstated on August 5, 1996. Defendant filed a motion to dismiss, arguing that the charges were barred by either *res judicata* or collateral estoppel. On October 17, 1996, Judge O'Malley granted the defendant's motion

to dismiss the criminal prosecution. Judge O'Malley found that the State was collaterally estopped from pursuing the action based on the finding of no abuse made by Judge Kaplan. In so holding, Judge O'Malley reasoned that Judge Kaplan ruled on the single incident from May 29, 1996, and while the State potentially had more evidence, the State had not identified any further occurrence witnesses.

The issue on appeal is whether Judge O'Malley erred in applying the doctrine of collateral estoppel to bar the subsequent criminal prosecution of defendant when Judge Kaplan had previously entered a finding of no abuse based on the same events. We review *de novo* the circuit court's order granting a motion to dismiss.

The first proceeding involved a *pro se* petition for an order of protection brought by Dusanka within the Krstics' ongoing divorce proceedings. Dusanka was the petitioner and her husband, Branislav, was the respondent. In the second action, the State filed two charges against Branislav as defendant, a domestic battery charge and violation of a prior order of protection. 720 ILCS 5/12—3.2(a)(1), 12—30 (West 1996). Defendant asserted defensive estoppel to preclude the criminal prosecution.

■ The doctrine of collateral estoppel provides that an issue, raised and decided by a court of competent jurisdiction, may not be relitigated in a later action between the same parties in the same or a different cause of action. *People v. Buonavolanto*, 238 Ill. App. 3d 665, 670, 606 N.E.2d 509, 512 (1992). In criminal cases, collateral estoppel is a component of the double jeopardy clause. *People v. Carrillo*, 164 Ill. 2d 144, 151, 646 N.E.2d 582, 586 (1995), citing *Ashe v. Swenson*, 397 U.S. 436, 445-46, 25 L. Ed. 2d 469, 476-77, 90 S. Ct. 1189, 1195 (1970).

An equitable doctrine, collateral estoppel applies when: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). Without addressing the first two prongs, we find that collateral estoppel is inapplicable here because the State was not a party to the initial civil proceeding.

■ Historically, for collateral estoppel to apply, the law required the parties in both proceedings to be the same. Known as "mutuality," this requirement has been abandoned for civil cases but is still required for criminal cases. *People v. Franklin*, 167 Ill. 2d 1, 13-14, 656 N.E.2d 750, 755 (1995). Although the courts have only considered mutuality in the criminal context when applied to defendants (*Franklin*, 167 Ill. 2d at 13-14, 656 N.E.2d at 755; *People v. Hall*, 279 Ill.

App. 3d 602, 605, 664 N.E.2d 1122, 1124 (1996)), we believe, under the same rationale, the State may not be collaterally estopped from a later criminal proceeding unless it was a party in the initial suit. See also *Talarico v. Dunlap*, 177 Ill. 2d at 191 (the party to be collaterally estopped must have actually litigated the issue in the first suit).

The cases applying collateral estoppel upon which defendant relies involved the State in both the civil and criminal proceedings. For example, in *Buonavolanto*, 238 Ill. App. 3d 665, 606 N.E.2d 509, the court applied collateral estoppel to bar the State from pursuing a criminal conviction for delivery of a controlled substance when the State had failed to prevail in the initial civil forfeiture suit based on the same issue. Although the court relied on the differing burdens of proof between the two proceedings, implicit to the discussion was the fact that the State was a party in both the initial civil forfeiture action and the subsequent criminal proceeding. *Buonavolanto*, 238 Ill. App. 3d at 666, 606 N.E.2d at 510. See also *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (1984).

■ For collateral estoppel purposes, the State's involvement as a party in both proceedings is critical. By definition, the duty of the State's Attorney is to "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 55 ILCS 5/3—9005(a)(1) (West 1996). In this case, Dusanka filed the petition *pro se* and was represented at the hearing by a private attorney.

In retaining the mutuality requirement as between criminal cases, the *Franklin* court emphasized the necessity of affording the State the full and fair opportunity to litigate an issue. *Franklin*, 167 Ill. 2d at 13, 656 N.E.2d at 755. Because the State was not involved in the initial petition for an order of protection, the State cannot be estopped from pursuing criminal prosecution based on the same facts.

Reversed.

GREIMAN, P.J., and ZWICK, J., concur.