THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL G. WOUK, Defendant-Appellant.

First District (3rd Division)   No. 1—99—2561

Opinion filed October 25, 2000.—Rehearing denied December 4, 2000.

34

Steven H. Fagan, of Fagan, Salon & Associates, of Des Plaines, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Alvin S. Ratana, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

In *People v. Krstic*, 292 Ill. App. 3d 720, 723, 686 N.E.2d 692 (1997), we held the collateral estoppel doctrine did not bar the State from prosecuting a domestic battery charge after a trial judge had dismissed a *pro se* petition for an order of protection, "because the State was not a party to the initial civil proceeding."

In this case, we now confront the question left unanswered in *Krstic*: Does collateral estoppel prevent the State from prosecuting a

domestic battery charge after a hearing judge dismisses an order of protection petition brought and tried by the State? Our answer is no, and we affirm the defendant's conviction.

FACTS

During acrimonious divorce proceedings, Paul Wouk (Paul) was charged with domestic battery against his ex-wife, Sandra Wouk (Sandra), following an incident on August 11, 1998.

Before trial, the prosecution filed a petition seeking an order of protection for Sandra. At the hearing on this petition, Sandra testified Paul arrived at the marital residence on August 11: "He went to use the phone and I asked him not to. I just switched it in my name, and I went to hang up the phone, and he hit me." Sandra said Paul hit her in the arm. Sandra also testified about a prior, unreported incident of domestic violence three years earlier, shortly before the divorce. Sandra believed Paul would commit further acts of domestic violence if the court did not issue an order of protection.

Paul testified he arrived at the marital residence on August 11 and immediately went to the kitchen to use the telephone, when Sandra entered the room: "She said not to use the phone. That it was hers." Paul resumed dialing and turned toward the wall, away from Sandra:

"As I was talking on the phone, I had my head down ***, and I heard her come up behind me. And as I started to look up, I saw an arm coming over my left shoulder.

* * *

I reacted by trying to block it by my arm going up. As my arm went up and my head went up, I saw she was reaching to turn the phone off."

According to Paul, he did not punch or hit Sandra. He saw her reaching over his shoulder to shut off the telephone and merely blocked her arm, making contact with her.

The judge denied the petition, saying to Sandra: "Your testimony, ma'am, is that when he came home from work, he came in there to use the phone. And you told him not to use the phone. And either hung it up or tried, and he hit you on the arm. *** I think his story makes more sense to me than yours."

The judge, who earlier had noticed "a bruise on [Sandra's] inner, lower arm, between the elbow and the wrist," then addressed the assistant State's Attorney:

"[I]n any case I don't believe her. And I have to make a decision. Her testimony about she told him now [sic] to use the phone, he couldn't use the phone. This is a lot of hooey. Unless there is something in the divorce decree that says he cannot now use the phone in a house they both have.

He states the phone was in his name prior to the 11th. That she changed the phone. And now I tell you what seems strange. The bruise on her arm is under the under portion of her arm. As she came over and he blocked her, that is where a bruise would be.

If you hit somebody you don't hit them on the underside of the arm. I just don't find your [Sandra's] testimony to be credible. The [order of protection] is denied."

Paul then filed a motion to dismiss his domestic battery charge, contending the hearing judge's order collaterally estopped the prosecution. Another judge heard and denied Paul's motion.

The case proceeded to a bench trial. It was a virtual carbon copy of the hearing.

Sandra testified Paul entered the marital residence on August 11 and stormed into the kitchen to use the telephone. Paul did not respond when she asked him not to use the telephone. According to Sandra, when she tried to hang up the telephone, he hit her in the middle of her right arm.

Officer Collins of the Palos Hills police department testified he spoke with Sandra at the Wouk residence on August 11. Officer Collins observed "redness" on her right arm.

Paul testified he entered the marital residence on August 11 and went into the kitchen to use the telephone. As Paul was dialing, Sandra came into the kitchen and told him not to use her telephone. Paul continued:

"I was facing the wall with my head kind of down and I was talking on the phone and then I heard her come up.

She was still saying things—I don't remember what—and then I heard her come up from behind me and then what happened after that, as I heard her coming up from behind me, I started to look up and I saw an arm coming over my left shoulder and I reacted by moving my arm up."

Paul said he did not intend to hit Sandra; he raised his arm as a reaction, "a protective instinct."

The judge found Paul guilty of domestic battery. Paul filed a posttrial motion, again contending the civil order precluded his criminal prosecution. The trial court denied the posttrial motion. This appeal followed.

## DECISION

We review the legal question presented in this case *de novo. People v. Saunders*, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790 (1997).

■ Under the equitable doctrine of collateral estoppel, a valid, final judgment which determines an ultimate fact issue precludes the same

parties from relitigating that issue in a future case. See *People v. Paw-laczyk*, 189 Ill. 2d 177, 189, 724 N.E.2d 901 (2000). Collateral estoppel can apply when the first case is civil and the second case is criminal. See *People v. Moore*, 138 Ill. 2d 162, 166, 561 N.E.2d 648 (1990); see generally S. Brenner, *"Crossing-Over:" The Issue-Preclusive Effects of a Civil/Criminal Adjudication upon a Proceeding of the Opposite Character*, 7 N. Ill. L. Rev. 141 (1987).

Our supreme court has defined the minimum, threshold requirements for applying collateral estoppel:

> "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Talarico v. Dunlap*, 177 Ill. 2d 185, 191, 685 N.E.2d 325 (1997).

Additionally, "[f]or collateral estoppel to apply, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit." *Talarico*, 177 Ill. 2d at 191; *In re Marriage of Connors*, 303 Ill. App. 3d 219, 227, 707 N.E.2d 275 (1999); see Restatement (Second) of Judgments § 27 (1982) ("Issue Preclusion—General Rule").

The parties—the State and Paul—were the same in both proceedings. The State does not seriously dispute that the hearing judge entered a final order on the merits of its petition against Paul. Nor is there any suggestion the State did not have a full and fair opportunity to present its case at the hearing. We assume the State was motivated to earnestly and successfully litigate its petition, a potentially relevant factor in a collateral estoppel analysis. See *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 389 (2000). The question that remains is whether the issue decided in the order of protection hearing was identical to the issue decided in the domestic battery trial.

■ What issue (or issues) did the judge decide in the order of protection hearing? Section 214 of the Domestic Violence Act of 1986 provides an answer:

> "(a) Issuance of order. If the court finds that *petitioner has been abused by a family or household member* ***, an order of protection prohibiting the abuse, neglect, or exploitation shall issue ***." (Emphasis added.) 750 ILCS 60/214(a) (West 1998).

Abuse includes physical abuse (750 ILCS 60/103(1) (West 1998)), and physical abuse includes "knowing or reckless use of physical force" or "knowing or reckless conduct which creates an immediate risk of physical harm" (750 ILCS 60/103(14)(i), (14)(iii) (West 1998)).

■ And what issue did the trial judge·decide in the domestic battery case? Paul was charged under section 12—3.2(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12—3.2(a)(1) (West 1998)). It provides:

"A person commits domestic battery if he intentionally or knowingly without legal justification by any means:

(1) Causes bodily harm to any family or household member ***." 720 ILCS 5/12—3.2(a)(1) (West 1998).

Under both statutes, the term "family or household members" includes former spouses. See 725 ILCS 5/112A—3(3) (West 1998); 750 ILCS 60/103(6) (West 1998).

The hearing judge, then, decided Sandra was not physically abused or harmed by Paul. She said so, clearly and unambiguously. There, the State had to meet a preponderance of the evidence burden. The battery trial judge decided, beyond a reasonable doubt, Sandra was physically harmed by Paul. The factual issues were identical.

In *People v. Buonavolanto*, 238 Ill. App. 3d 665, 606 N.E.2d 509 (1992), the State filed a civil forfeiture case under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505) against the defendant's ownership in an automobile. The first trial judge dismissed the case because the State failed to prove the automobile was used to facilitate a crime. The State then filed a criminal case against the defendant, charging him with a violation of the same statute. The second trial judge found the defendant guilty.

On appeal, we held collateral estoppel should have barred the defendant's criminal case, and we reversed his conviction. *Buonavolanto*, 238 Ill. App. 3d at 672-73. We noted the defendant's guilt was premised solely on his use of the automobile to transport narcotics. *Buonavolanto*, 238 Ill. App. 3d at 671. "Because this issue had been decided unfavorably to the State under a preponderance of the evidence standard of proof, the State is barred from proceeding against defendant under a beyond a reasonable doubt standard." *Buonavolanto*, 238 Ill. App. 3d at 671; accord *Fitzgerald v. Superior Court*, 173 Ariz. 539, 548, 845 P.2d 465, 474 (App. 1992); *In re Neil C.*, 308 Md. 591, 594-95, 521 A.2d 329, 331 (1987).

In *Buonavolanto*, we cited a Maryland case closely analogous to the case before us. In *Bowling v. State*, 298 Md. 396, 470 A.2d 797 (1982), the State filed a civil, "Child in Need of Assistance" petition, alleging the defendant had sexually abused his adoptive daughter. The first trial judge dismissed the petition because he was not persuaded, by a preponderance of the evidence, any sexual abuse had occurred. The State then filed a criminal case against the defendant, grounded on the same sexual abuse allegations in the earlier civil petition. The second trial judge denied the defendant's motion to dismiss under the collateral estoppel doctrine.

In an interlocutory appeal, the court held collateral estoppel barred the defendant's criminal case. *Bowling*, 298 Md. at 405, 470 A.2d at 801. The court said:

> "Virtually the entire circuit court trial upon the *** petition was devoted to resolving the question whether the State had proven Bowling guilty of these acts. The State, having been unsuccessful earlier in proving that Bowling was guilty of engaging in the alleged wrongful conduct, should not be given a second chance, thereby causing the defendant 'to "run the gauntlet" a second time.' " *Bowling*, 298 Md. at 405, 470 A.2d at 801, quoting *Ashe v. Swenson*, 397 U.S. 436, 446, 25 L. Ed. 2d 469, 477, 90 S. Ct. 1189, 1195 (1970).

Similarly, in *Lockwood v. Superior Court*, 160 Cal. App. 3d 667, 206 Cal. Rptr. 785 (1984), the state juvenile probation department filed a civil dependency petition, alleging the defendants abused their child. The local police also filed a criminal child abuse complaint. First, a juvenile court judge found the State had not proved, by a preponderance of the evidence, the child's injuries resulted from the defendants' abuse and dismissed the petition. Then a criminal magistrate denied the defendants' motion to dismiss under the collateral estoppel doctrine.

In an interlocutory appeal, the court held collateral estoppel barred the criminal case. *Lockwood*, 160 Cal. App. 3d at 672-73, 206 Cal. Rptr. at 788. The court said:

> "The narrow issue litigated in the dependency proceeding was whether the parents had cruelly inflicted the child's injuries upon him. The juvenile court expressly found no such abuse.
>
> At no point in the criminal proceedings have the People suggested that they are pursuing any theory other than that the Lockwoods themselves wilfully injured their child. We conclude that the Lockwoods have sufficiently demonstrated identity of issues for purposes of collateral estoppel." *Lockwood*, 160 Cal. App. 3d at 672, 206 Cal. Rptr. at 788.

Like the defendants in *Buonavolanto*, *Bowling*, and *Lockwood*, Paul was criminally prosecuted for conduct of which a trial court, by a preponderance of the evidence, had exonerated him. The ultimate fact issues in both cases were identical, and collateral estoppel normally would apply.

■ But "collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Talarico*, 177 Ill. 2d at 191-92. Mindful of "the practical realities of litigation," we must balance our legal system's need for finality against the estopped party's right to fully present its case. *Talarico*, 177 Ill. 2d at 192; *People v.*

*Ward*, 72 Ill. 2d 379, 384, 381 N.E.2d 258 (1978) (in criminal cases, collateral estoppel is not to be applied in an archaic, hypertechnical fashion, but with realism and rationality). Here, the estopped party would be the State. To find estoppel, it must be "clear that no unfairness will result" to the State. *Savickas*, 193 Ill. 2d at 388.

■ As section 28 of the Restatement (Second) of Judgments instructs:

> "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> * * *
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action * * *." Restatement (Second) of Judgments § 28(5) (1982).

See *New York v. Fagan*, 66 N.Y.2d 815, 816, 489 N.E.2d 222, 222 (1985) ("Strong policy [reasons] militate against giving issues determined in prior litigation preclusive effect in a criminal case").

■ Here, important public policy reasons exist to prevent the application of collateral estoppel.

The differences of purpose and goal in the civil and criminal procedures are "very real." *Moore*, 138 Ill. 2d at 169. The General Assembly identified several purposes underlying the Domestic Violence Act of 1986 (the Act), including to "[s]upport the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse." 750 ILCS 60/102(4) (West 1998).

In order-of-protection proceedings, the standard of proof is proof by a preponderance of the evidence (750 ILCS 60/205(a) (West 1998)), and the respondent has no jury trial right (750 ILCS 60/206 (West 1998)). The Act provides for expedited service of process (750 ILCS 60/210(c) (West 1998)), and "[a] petition for an order of protection shall be treated as an expedited proceeding" (750 ILCS 60/212(a) (West 1998)).

In *People v. Jones*, 301 Ill. App. 3d 608, 610-11, 703 N.E.2d 994 (1998), we refused to give preclusive effect to a prison disciplinary proceeding: "[D]isciplinary proceedings are to maintain prison order; they are not designed to protect the state's citizenry and its laws. Accordingly, public policy demands subsequent criminal prosecution."

Here, the focus of an order-of-protection proceeding is the immediate protection of abused family or household members, not the guilt of

the accused and the more general protection of society. See *In re A.A.*, 307 Ill. App. 3d 403, 405, 718 N.E.2d 589 (1999); *cf. People v. Dvorak*, 276 Ill. App. 3d 544, 552, 658 N.E.2d 869 (1995) ("Since the [summary driver's license suspension] proceeding is not a means by which the State attempts to convict the defendant of a crime, the decision reached by the trial court in such a proceeding cannot be the functional equivalent of an 'acquittal' for double jeopardy purposes ***").

The prosecution's concern that it would be required to appear at all hearings for orders of protection ignores the holding in *Krstic*. See *Krstic*, 292 Ill. App. 3d at 723; accord *Delaware v. Manista*, 651 A.2d 781, 786 (Del. Fam. Ct. 1994). At the same time, we recognize the procedural and substantive difficulties inherent in developing criminal charges which overlap the allegations in the order-of-protection petition (see *People v. Gates*, 434 Mich. 146, 163, 452 N.W.2d 627, 633 (1990); *State v. Roselle*, 84 N.Y.2d 350, 357, 643 N.E.2d 72, 76 (1994)).

In this case, it is unclear whether unfairness to the State would result from application of the collateral estoppel doctrine. For that reason, we decline to give preclusive effect to the finding made during the order of protection hearing.

## CONCLUSION

For the reason stated, we affirm the defendant's conviction and sentence for domestic battery.

Affirmed.

CERDA and BURKE, JJ., concur.