NOTICE
Decision filed 10/10/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230613-U

NO. 5-23-0613

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 21-CF-253 |
| | ) | |
| SHAWN A. SHERRILL, | ) | Honorable |
| | ) | Dominic L. Kujawa, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court erred in allowing testimony of a deceased witness. An interrogation video of the defendant contained hearsay and irrelevant and inflammatory comments. The jury instructions were not improper and there was sufficient evidence to sustain the convictions against the defendant.

¶ 2    A jury convicted the defendant, Shawn A. Sherrill, of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse. The defendant was sentenced to 29 years in the Illinois Department of Corrections (IDOC). On appeal, the defendant argues that the circuit court erred in allowing the testimony of a witness from a prior order of protection hearing, where the witness was no longer available because she had died; an interrogation video of the defendant contained inadmissible, irrelevant, and inflammatory statements; the jury instructions violated the defendant's right to a unanimous jury verdict; and there was insufficient evidence to sustain a

1

conviction for aggravated criminal sexual abuse. For the following reasons, we reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4     The defendant, born in 1987, was in a relationship with Angela Morris. Morris had a daughter, L.M., born on August 20, 2004. In early 2019, the defendant, and Morris reported to the Belleville Police Department that L.M. had been abused by a close family friend, Isaiah Sargent. The defendant petitioned for an order of protection on behalf of L.M., and against Sargent. Subsequently, the Department of Children and Family Services (DCFS) became involved, and L.M. disclosed that the defendant was the actual abuser, not Sargent. The order of protection filed by the defendant against Sargent was denied.

¶ 5     Morris petitioned for an order of protection against the defendant in Morris v. Sherrill, No. 19-OP-139 (Cir. Ct. Madison County). Morris testified against the defendant regarding an October 1, 2018, incident, where she found the defendant and L.M. in a bedroom and neither were clothed. The Madison County circuit court granted the order of protection.

¶ 6     A criminal complaint was filed against the defendant on February 17, 2021, and the defendant was charged with two counts of criminal sexual assault of L.M. in violation of section 11-1.20(a)(4) of the Criminal Code of 2012 (720 ILCS 5/11-1.20(a)(4) (West 2018)) and one count of aggravated criminal sexual abuse of L.M. in violation of section 11-1.60(d) of the Criminal code of 2012 (720 ILCS 5/11-1.60(d) (West 2018)). Count one alleged that the defendant had used his penis and made contact with the anus of a female child over 13 years old and under the age of 18. Count two alleged that the defendant had placed his finger inside of the vagina of a female child over 13 years old and under the age of 18. Count three alleged that the defendant had touched or fondled a child's breasts for the purpose of sexual gratification or arousal. All three counts alleged

2

that the acts occurred between May 1, 2018, and September 30, 2018. The defendant was criminally indicted by a grand jury on those three counts.

¶ 7 Morris died before the defendant's criminal trial was held in this case. On March 24, 2022, the State filed a motion *in limine* to permit the testimony of Morris from the order of protection hearing in Morris v. Sherrill, No. 19-OP-139 (Cir. Ct. Madison County). The State argued that Morris's statements should be permitted at trial as the issues raised in the order of protection against the defendant were substantially similar to the criminal matter, and the defendant had the opportunity to personally cross-examine Morris.

¶ 8 The circuit court held a hearing on the motion *in limine* on April 4, 2022. The State requested that an audio recording of the order of protection hearing, along with the testimony of a person who was present at the time of the hearing, be allowed at trial. A transcript was not available because the court reporters were not present in the courtroom and portions of the testimony were inaudible. Defense counsel requested that the State submit a copy of the audio recording for the circuit court to review.

¶ 9 Defense counsel argued that Morris's prior testimony should be barred under the sixth amendment's confrontation clause. The defendant was *pro se* during the order of protection hearing, and the defense argued that the defendant's cross-examination of Morris was not effective. The defense also questioned Morris's mental capacity as a witness and noted that Morris had a speech impediment. Additionally, the defense argued that the recording included prejudicial statements by the circuit court where the defendant was admonished that any statements he gave could be used against him. The circuit court also directed a transcript of the proceeding be given to the St. Clair County State's Attorney for its consideration of the defendant's testimony. The

3

circuit court took the matter under advisement and subsequently allowed the video recording to be introduced at trial.

¶ 10 The jury trial began on April 11, 2022. During opening statements, the State quoted Morris's testimony from the order of protection hearing and explained that Morris would not be present to testify.

¶ 11 The State called the DCFS caseworker, Barbara Traylor, to testify. Traylor's investigation began after a claim of abuse was made against Sargent on January 12, 2019. Traylor met with L.M. on January 18, 2019, and L.M. disclosed that the defendant had harmed her, not Sargent. Traylor also met with L.M.'s mother, Morris. Traylor testified that Morris accepted assistance from DCFS to move with L.M. to a safe place away from the defendant. When DCFS arrived at the home of Morris and L.M. to gather their belongings, the defendant stated that Morris was not going anywhere, and he called the police. Morris was pregnant with the defendant's child at that time. L.M. ended up in foster care, without Morris.

¶ 12 Traylor additionally testified that the defendant had filed for an order of protection against Sargent. Traylor testified at the order of protection hearing where Sargent was the respondent. Directly after the hearing, Traylor spoke to the defendant at the courthouse regarding an incident where Morris caught the defendant naked and standing over L.M., who was naked and crying. The defendant had explained to Traylor that he was not wearing pants at that time because he had intended to punish L.M. with his belt and his pants fell down when he removed his belt.

¶ 13 Traylor testified that she had also spoken to Morris after Morris testified at Sargent's order of protection hearing. On the same day that the circuit court denied the order of protection against Sargent, Morris filed an order of protection against the defendant in Madison County, Illinois.

4

Traylor additionally testified that the defendant was "indicated" by DCFS based on the statements made by L.M., Morris, and the defendant.

¶ 14    Timothy Crimm testified that when he was a detective for the Belleville Police Department, he was involved in an investigation of sexual assault reported by the defendant. That investigation turned into an investigation against the defendant. Crimm interviewed the defendant on February 8, 2019, and the video-recorded interview was published for the jury and admitted into evidence.

¶ 15    During the recorded interview, the defendant provided Crimm with a copy of an order of protection petition where the defendant was the respondent. He also gave Crimm copies of the defendant's medical records. Crimm read allegations from an order of protection petition aloud for the video recording. The allegations included that on Monday, October 1, 2018, Morris saw the defendant naked "with his penis out" while L.M. was also naked and on her bed. The defendant quickly pulled up his pants after Morris walked in and he denied any wrongdoing.

¶ 16    The video recording included the defendant attempting to establish an alibi based on his health issues. He claimed that L.M. and Morris had left his residence in August of 2018. The medical records that he had provided to Crimm indicated that the defendant had been hospitalized for an appendectomy on approximately September 13, 2018, and he remained hospitalized until September 28, 2018, due to complications. The defendant asserted that his movement was limited after the procedure, and he would not have been physically able to commit the alleged acts against L.M. The defendant additionally claimed that the hospital records established that he returned to the hospital on October 1, 2018, through October 2, 2018. The video also depicted Crimm questioning the defendant on whether the incident could have occurred at a different time. The defendant denied the allegations.

5

¶ 17    Crimm testified that he had used techniques during the recorded interview to encourage the defendant to confess to the allegations. During the recorded interview, Crimm told the defendant that he "expect[ed] honesty" as he prompted the defendant to provide an explanation of what could have occurred. The defendant responded that Morris would not have married him if the incident had actually occurred. Crimm then explained to the defendant on the video recording that he had spoken to Morris, and she stated that she forgave the defendant after they had a conversation about what had happened. Crimm indicated that Morris only decided to marry the defendant because she was pregnant with the defendant's child. Crimm additionally stated on the video that "if you don't want to be that type of person that owns their mistakes, that's up to you."

¶ 18    The video included the defendant stating that Morris had a pattern of using boyfriends to "get what she can out of them." Crimm responded that he did not doubt the defendant's statement and added that "when people tell exact the same story," there was an "old saying" of "when there's smoke, there's fire." The defendant maintained that he was used by Morris. Crimm responded that he did not believe that the defendant was used, rather, L.M. was used by "having sex with a man when she was not ready to make that decision." The defendant further claimed that Morris and L.M. were manipulative and had made up the story, and that "[Sargent] was the mastermind of this." Crimm then told defendant that he did something that he should not have done, and stated, "[Defendant], you know I'm right."

¶ 19    After the video concluded, Crimm's testimony continued. Crimm testified that he had not attempted to collect DNA samples from L.M. because he was notified of the allegations several months after the incident, and there would not have been any forensic evidence left because of the delay in reporting. Crimm additionally testified that he believed Morris's statement that she had

6

walked in on the defendant on October 1, 2018, and did not find that the defendant's health issues would have made the actions impossible.

¶ 20    After Crimm's testimony, L.M. testified that when she was 13 years old, her mother, Morris, met the defendant at a food bank. The defendant invited Morris and L.M. to his apartment for a spaghetti dinner. Morris became romantically involved with the defendant and Morris and L.M. moved into the defendant's one-bedroom apartment in Belleville, Illinois. L.M. slept in the bedroom while Morris and the defendant slept in the living area.

¶ 21    L.M. testified that after she moved in with the defendant that he "started to get all touchy." The defendant would put his hands on L.M.'s "breasts" and "butt." This would occur while Morris was in another room of the apartment. While L.M.'s mother was at work, the defendant would care for and discipline L.M. L.M. explained that the defendant had disciplined her by "put[ting] water on my butt and like spank me," without pants on.

¶ 22    L.M. further testified that the defendant had "put his hand in my private area" more than once. L.M. also explained that the defendant would put "Blue Magic" hair grease on his private area and insert his penis in L.M.'s anus. L.M. described that the first time it occurred she was on her hands and knees in her bed and the defendant was on his knees behind her. This would happen frequently while Morris was at work, and sometimes it occurred in L.M.'s bedroom while her mother was asleep in the living room.

¶ 23    L.M. additionally testified that the defendant tried to make her touch his penis and tried to have her perform oral sex. The defendant had told her to "act like it's a Vienna sausage." L.M. explained that she would move away from the defendant when this happened and she never performed oral sex. The defendant would also "rub himself" while showing L.M. pornography on

7

his phone. He had also taken a photograph of L.M.'s naked private area with his cell phone and then immediately deleted the photograph.

¶ 24    When the defendant forced himself onto L.M., she would try to push him off. L.M. did not tell Morris about the defendant because she did not know how Morris would react. L.M. did not want to upset her mother. The defendant had also told L.M. not to tell anyone.

¶ 25    L.M. explained that Morris discovered the defendant with L.M. in the bedroom and L.M. was crying. Morris walked in when the defendant was "putting his penis in [L.M.'s] butt." The defendant went into the bathroom when Morris appeared, and L.M. told Morris what had happened. Morris directed L.M. to put her clothes back on as Morris argued with the defendant. L.M. heard the defendant tell Morris that he was giving L.M. "a butt whooping" but did not provide a reason for disciplining L.M. The defendant was visibly upset and he left the apartment. Then, L.M. and Morris moved in with L.M.'s uncle, Billy, and his friend, Sargent. L.M. recalled that the defendant put her belongings in a garbage bag by a dumpster when they moved out.

¶ 26    L.M. testified that the defendant accused Sargent of touching L.M., but he had never touched L.M. sexually. L.M. also testified that Morris married the defendant after Morris caught the defendant with L.M. They moved into an apartment in Collinsville, Illinois, and the defendant's conduct towards L.M. stopped when they lived in Collinsville together.

¶ 27    After L.M. testified, the recording of a hearing held on February 21, 2019, in Morris v. Sherrill, No. 19-OP-139 (Cir. Ct. Madison County) was published to the jury and admitted into evidence. A stipulation was admitted into evidence that the recording was a fair and accurate copy of a recording of the hearing with the exception of court ordered redactions.

¶ 28    The jury heard Morris testify, during the order of protection hearing, that she sought an order of protection because she caught the defendant in L.M.'s bedroom while L.M. was naked on

8

the bed. The defendant was on his knees, he was naked from the waist down, and his pants were on the floor. Morris testified that the defendant "licked my daughter's thigh." The defendant denied doing anything wrong. Morris indicated that she did not believe the defendant, and she left the defendant the following day with L.M. Morris was scared of the defendant. At the conclusion of the testimony by Morris, the defendant sought to conduct a *pro se* cross-examination of Morris.

¶ 29    Before the cross-examination began on the video recording, the circuit court admonished the defendant that criminal charges may be brought against him and that anything he said could be used against him in the future. The circuit court informed the defendant that the burden of proof in a civil case of preponderance of the evidence was different than the burden of proof of beyond a reasonable doubt in a criminal case; however, anything incriminating may be used against the defendant in a potential criminal matter. The circuit court also stated that the defendant was not required to speak and that a copy of the transcript would be sent to the St. Clair County State's Attorney's office for potential criminal charges.

¶ 30    On the video recording, the defendant asked Morris if she had left his home on August 31, 2018, and gone to work. Morris agreed that this was true. The defendant additionally asked Morris if she lived in a motel from August through November, and she testified that she had stayed in a motel during that time. The defendant then pointed out that the order of protection alleged that the incident took place on October 1, 2018. Morris testified that she had married the defendant two months later, on December 29, 2018, and allowed him to move into her home after they married. The defendant questioned Morris about why she would live with someone that she was scared of two months after the alleged incident occurred. Morris explained that she "wasn't thinking right."

¶ 31    The defendant questioned Morris's motive for filing the order of protection and whether it was an effort to have L.M. returned to her care. The defendant briefly questioned Morris on the

9

order of protection filed against Sargent and whether he had forced Morris to testify at that hearing. The defendant also raised questions about whether he had prevented Morris from seeing or calling her brother. Morris maintained that she knew what she saw the defendant do to L.M.

¶ 32    The State rested after the audio recording was admitted into evidence. The defendant then argued for dismissal of his criminal case, as the State failed to make a *prima facie* case. The circuit court denied the defendant's motion. The defendant did not testify during his criminal trial, and no further witnesses or evidence were presented.

¶ 33    The jury instruction conference then took place. The instruction for criminal sexual assault offenses did not specify the specific sexual contact. The instructions required that the jury's verdict be unanimous. The verdict forms for the two counts of criminal sexual assault distinguished the type of sexual assault conduct. One set of forms included a parenthetical which described the sexual conduct of "contact between penis and anus," and the other set of forms included the language "finger in vagina."

¶ 34    The jury found the defendant guilty of aggravated criminal sexual abuse, criminal sexual assault with contact between penis and anus, and criminal sexual assault with finger in vagina. After the verdicts were read, the jury was polled and each juror stated that the defendant was guilty of the charges.

¶ 35    The defendant filed a posttrial motion on April 28, 2022, and argued that the State failed to prove the defendant guilty of criminal sexual assault beyond a reasonable doubt. The defendant additionally claimed that the State had made prejudicial and inflammatory statements in closing argument which prejudiced the defendant's right to a fair trial.

¶ 36    The defendant was sentenced to two consecutive 12-year sentences for the two counts of criminal sexual assault and a consecutive 5-year sentence for aggravated criminal sexual abuse.

10

The defendant filed a motion to reconsider his sentence, and the circuit court denied the defendant's motion. This appeal followed.

¶ 37                                    II. ANALYSIS

¶ 38    On appeal, the defendant argues that a deceased witness's testimony from an order of protection hearing violated his sixth amendment right to confront witnesses; the admission of the defendant's interrogation video was in error as it contained inadmissible hearsay statements and inflammatory and irrelevant comments; the jury instructions violated the defendant's right to jury unanimity; and there was insufficient evidence to support the aggravated criminal sexual abuse conviction.

¶ 39                    A. Prior Testimony of a Deceased Witness

¶ 40    Both the United States Constitution and Illinois Constitution guarantee the defendant's right to confront witnesses against him. U.S. Const., Amend. VI; Ill. Const. 1970, Art. I, § 8. In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that testimonial hearsay statements may not be admitted into evidence against an accused unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54. A challenge made under the confrontation clause is reviewed *de novo*. *People v. Martin*, 408 Ill. App. 3d 891, 894 (2011).

¶ 41    As Morris died prior to trial, she was unavailable to testify. The focus here is whether the defendant was provided with a sufficient opportunity during an order of protection hearing to effectively cross-examine Morris.

¶ 42    In determining whether the prior opportunity for cross-examination was effective, our supreme court has identified four main considerations: "(1) whether the prior cross-examination had the same or similar motivation as a subsequent examination, (2) whether defense counsel had

11

an unlimited opportunity to cross-examine, (3) whether defense counsel knew all relevant information to conduct an effective cross-examination, and (4) whether there were any restrictions, overt or covert, on the examination." *People v. Diggs*, 2023 IL App (1st) 220955, ¶ 125. Additionally, whether there was ample opportunity to cross-examine at a prior hearing is based on the circumstances of each case. *People v. Rice*, 166 Ill. 2d 35, 39 (1995).

¶ 43    The motivation of a respondent in an order of protection proceeding is different from that of a defendant in a criminal case. The proceedings to obtain an order of protection are civil in nature and are governed by a preponderance of the evidence standard. 750 ILCS 60/205(a) (West 2022). "The focus of an order-of-protection proceeding is the immediate protection of abused family or household members, not the guilt of the accused and the more general protection of society." *People v. Wouk*, 317 Ill. App. 3d 33, 40-41 (2000). A civil order of protection proceeding against a defendant is not the type of deprivation of physical liberty which requires the appointment of counsel. *In the Interest of T.W.*, 166 Ill. App. 3d 1022, 1026-27 (1988). As such, the defendant was *pro se* at the order of protection hearing as he was not entitled to the appointment of counsel.

¶ 44    Morris filed for an order of protection against the defendant approximately two years before the State filed the criminal complaint against the defendant. The order of protection petition specified an incident that purportedly occurred on October 1, 2018. During the order of protection hearing, the defendant focused his *pro se* cross-examination of Morris on her whereabouts on October 1, 2018. The defendant additionally questioned Morris on whether she was fearful of the defendant and why she delayed seeking an order of protection.

¶ 45    The defendant did not have all of the relevant information to conduct an effective cross-examination. Order of protection proceedings are expedited. 750 ILCS 60/212(a) (West 2022). The defendant was criminally charged two years after the order of protection hearing. The criminal

charges alleged that the defendant had committed acts between May 1, 2018, and September 30, 2018, and the order of protection allegations included the date of October 1, 2018. The defendant was not aware of the specific criminal charges he faced when he had the opportunity to cross-examine Morris.

¶ 46     The scope of the defendant's cross-examination of Morris was focused on the October 1, 2018, allegation included in the order of protection petition. The defendant's criminal trial was an entirely different proceeding and the defendant had been charged with allegations prior to October 1, 2018. We additionally note that the defendant was admonished on his fifth amendment right to remain silent throughout the order of protection hearing, and defendant did not have counsel to question Morris on his behalf.

¶ 47     Considering the specific circumstances of this case, we find that the defendant did not have an ample opportunity to cross-examine Morris because at the time of his *pro se* cross-examination, the defendant was not aware of the nature of the charges that might flow from the claims against the defendant in the order of protection petition. Therefore, the circuit court erred in allowing the testimony.

¶ 48     *Crawford* violations are subject to harmless-error analysis. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). There are three different approaches to measuring whether error is harmless beyond a reasonable doubt: "(1) whether the error contributed to the defendant's conviction; (2) whether the other evidence in the case overwhelmingly supported the defendant's conviction; and (3) whether the excluded evidence would have been duplicative or cumulative." *People v. Lerma*, 2016 IL 118496, ¶ 33.

¶ 49     The error here, allowing the admission of the video recording, contributed to the defendant's conviction as this case hinged on witness credibility where no physical evidence of

sexual assault or abuse was available. The evidence was not overwhelming. Morris was the only witness who allegedly saw the defendant act inappropriately with L.M. While Morris's testimony corroborated the testimony of L.M., Morris's testimony was not entirely cumulative. Morris did not testify to observing the defendant penetrating L.M. Rather, Morris recounted an incident where she observed that the defendant licking L.M.'s thigh. We find that the circuit court's error was not harmless. Therefore, we reverse the defendant's convictions and remand for a new trial.

¶ 50                             B. Admissibility of Interrogation Video

¶ 51    The defendant additionally claims that the interrogation video of the defendant should have been redacted to exclude hearsay and irrelevant and inflammatory comments by Crimm. We consider whether the unredacted video is admissible on remand.

¶ 52    The defendant acknowledges that this issue was not preserved for appeal and seeks plain-error review. We may review forfeited errors under the plain-error doctrine where

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 53    Before addressing the defendant's plain-error argument, we must first determine whether error occurred. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009). "The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *People v. Brand*, 2021 IL 125945, ¶ 36.

¶ 54    Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay evidence is generally inadmissible

14

because of its lack of reliability, unless it falls within an exception to the hearsay rule. *People v. Broches*, 2022 IL App (2d) 200001, ¶ 26.

¶ 55 An officer's testimony or statement during a video recorded interrogation is ultimately subject to relevancy requirements and should be excluded where its probative value is outweighed by prejudicial effect. *People v. Hardimon*, 2017 IL App (3d) 120772, ¶ 35. Because a police officer is recognized as an authority figure, opinion statements regarding the ultimate question of fact are considered prejudicial. *Hardimon*, 2017 IL App (3d) 120772, ¶ 35. A statement by a police officer is admissible, however, if it is necessary to demonstrate the effect of the statement on the defendant or to explain a response by the defendant. *Hardimon*, 2017 IL App (3d) 120772, ¶ 35.

¶ 56 The defendant recognizes that portions of the video were relevant and proper. The defendant made statements related to how he was in a position of trust over L.M. The defendant denied being naked with L.M. in the video, which contradicted other statements made by the defendant where he provided an explanation of why his pants were down. Therefore, this should not be barred in its entirety.

¶ 57 The video, however, included inadmissible hearsay statements. Crimm told the jury that he used techniques to encourage the defendant to confess to the allegations. While the interrogation techniques are not at issue on appeal, Crimm had referenced conversations that he may or may not have had with Morris to entice the defendant into confessing. Crimm's recounting of Morris's explanation of why she married the defendant, knowing that he committed acts against L.M., was inadmissible hearsay. Morris's statement of allegations of abuse against the defendant, which Crimm read to the defendant, was also admitted in error.

¶ 58 Crimm also made multiple statements which implied that he believed that the defendant was guilty. Crimm stated that Morris and L.M. had repeated the same story, which bolstered their

15

credibility. Crimm told the defendant, "if you don't want to be the type of person who owns their mistakes, that's up to you," which asserts that the defendant is guilty. At one point, the defendant claimed that he was the actual victim. In response, Crimm indicated that L.M. was the real victim who had sex with the defendant before she was old enough to consent. Crimm also stated that the defendant "did something that you probably should not have done" and that the defendant knew that Crimm was right. These statements were irrelevant and prejudicial, as were any statements referencing other non-testifying witnesses who seemingly could have corroborated the State's case. The probative value of Crimm's statements was outweighed by prejudicial effect, and allowing those prejudicial statements was in error.

¶ 59    Under plain-error review, we may consider forfeited error where there is error, and the evidence is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence. See *People v. Herron*, 215 Ill. 2d 167, 178 (2005). The allegations were reported several months after they occurred, and no physical evidence was admitted. The jury verdict was based on L.M.'s credibility. We find that the defendant met his burden to show that the evidence was sufficiently closely balanced for plain-error review. On remand, the inadmissible portions of the defendant's interrogation video should be redacted.

¶ 60                                C. Jury Instructions

¶ 61    We turn next to whether the jury instructions were proper or violated the defendant's right to a unanimous jury verdict. Whether the jury instructions accurately stated the applicable law to the jury is reviewed *de novo*. *People v. Getter*, 2015 IL App (1st) 121307, ¶ 36. Whether the defendant's constitutional rights have been violated is reviewed *de novo*. *People v. Burns*, 209 Ill. 2d 551, 560 (2004). The defendant acknowledges that this issue was not preserved on appeal and also seeks plain-error review on this issue.

16

¶ 62    "The right to a unanimous verdict is among the most fundamental of rights in Illinois." *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 24. "In rendering its verdict, the jury need not be unanimous in its theory of the case; it must only be unanimous in determining defendant's ultimate guilt or innocence." *People v. Harper*, 251 Ill. App. 3d 801, 807 (1993). The jury is only required to be unanimous as to the conclusion that the defendant was guilty of each count of criminal sexual assault and aggravated criminal sexual abuse. *Harper*, 251 Ill. App. 3d at 807.

¶ 63    The jury here was given six verdict forms regarding the two possible outcomes, guilty or not guilty, for each charge against the defendant. The verdict forms ensured a unanimous verdict as to each count alleged as they distinguished the specific act of penetration committed by the defendant. The jury found the defendant guilty of aggravated criminal sexual abuse, criminal sexual assault for "contact between penis and anus," and criminal sexual assault for "finger in vagina." The circuit court also polled the jurors in this case and each juror stated that the defendant was guilty of the three offenses. Based on our review of the record, we find no error in the jury instructions.

¶ 64                              D. Sufficiency of the Evidence

¶ 65    Lastly, the defendant argues that the evidence was insufficient to convict the defendant of the offense of aggravated criminal sexual abuse. "A person commits aggravated criminal sexual abuse if that person commits an act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age and the person is at least 5 years older than the victim." 720 ILCS 5/11-1.60(d) (West 2020). The term "sexual conduct" includes:

> "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1 (West 2020).

17

¶ 66    When viewing all the evidence adduced at trial in a light most favorable to the State, we consider whether any rational trier of fact could find proof of the essential elements of the charged offense beyond a reasonable doubt when considering a challenge to the sufficient of the evidence. *People v. Edward*, 402 Ill. App. 3d 555, 564 (2010). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The reviewing court will not retry the defendant. *Collins*, 106 Ill. 2d at 261. We will not substitute our judgment for that of the trier of fact on issues regarding the weight of the evidence or the credibility of the witnesses. *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 79.

¶ 67    The defendant claims that the State did not present any evidence to prove that the defendant touched L.M.'s breast for the purpose of sexual gratification or arousal. "Intent to arouse or satisfy sexual desires may be established by circumstantial evidence, which the trier of fact may consider by inferring defendant's intent from his conduct." *People v. Ostrowski*, 394 Ill. App. 3d 82, 92 (2009). "The sexual nature of the contact could be determined from the type of contact and the circumstances surrounding it, including: (1) whether the contact was made to arouse or satisfy the sexual desires of the defendant or the victim; (2) the relationship between the defendant and the victim; (3) whether anyone else was present; (4) the length of the contact; (5) the purposefulness of the contact; (6) whether there was a legitimate, nonsexual purpose for the contact; (7) when and where the contact took place; and (8) the conduct of the defendant and the victim before and after the contact." *Ostrowski*, 394 Ill. App. 3d at 92.

¶ 68    L.M. testified that after she moved in with the defendant, he "started to get all touchy." The defendant would put his hands on L.M.'s "breasts" and "butt." He would touch L.M.'s breasts while Morris was not present. The defendant's behavior escalated to sexual penetration. No

18

evidence was presented that the defendant had a legitimate nonsexual purpose for touching L.M. A rational trier of fact could properly determine that defendant's touching of L.M.'s breasts was for the purpose of sexual gratification. The evidence was sufficient to sustain a conviction for aggravated criminal sexual abuse.

¶ 69 Double jeopardy bars retrial after reversal where the evidence at the first trial was not sufficient to support the conviction. See *People v. Olivera*, 164 Ill. 2d 382, 393 (1995); *People v. Jackson*, 348 Ill. App. 3d 719, 738 (2004). Although we are reversing the defendant's conviction, we find that the evidence was sufficient to prove the defendant guilty, beyond a reasonable doubt, of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse. Our ruling does not constitute a determination of the defendant's guilt that would be binding on retrial, and no double-jeopardy violation will occur in the event of a new trial. See *People v. Hale*, 2012 IL App (4th) 100949, ¶ 26.

¶ 70                                    III. CONCLUSION

¶ 71 For the foregoing reasons, we reverse the defendant's conviction and remand for a new trial.

¶ 72 Reversed and remanded.